**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Rigoberto MARTINEZ, Defendant–**
**Appellee.**

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Rigoberto MARTINEZ, Defendant–**
**Appellee.**

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Rigoberto MARTINEZ, Defendant–**
**Appellee.**

Nos. 94–50620, 94–50632 and 94–50633.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1995.

Decided Feb. 27, 1996.

Christopher Tayback, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellant.

Yolanda Barrera, Los Angeles, California, for defendant-appellee.

* The Honorable Charles A. Legge, United States District Judge for the Northern District of Cali-

Before: T.G. NELSON and KLEINFELD, Circuit Judges, and LEGGE, District Judge.*

KLEINFELD, Circuit Judge:

The district court dismissed an indictment for preindictment delay because the delay might increase the total sentence the defendant would serve. The United States appeals. We reverse.

### I. Facts

During 1992, the FBI ran a sting operation to catch traffickers in stolen goods. An FBI agent posed as a broker in stolen goods operating a crooked warehouse, which was wired with sound and video recording devices. In December of 1992, Martinez came in with a truckload of children's toys, worth $60,012, stolen in Rhode Island. He was indicted in June 1993, and pleaded guilty to possessing stolen property. Martinez's plea agreement stipulated that his "relevant conduct" for sentencing guidelines purposes would be limited to the $60,000 worth of toys. *See* U.S.S.G. § 1B1.3; *United States v. Fine*, 975 F.2d 596, 600 (9th Cir.1992) (conduct that is part of a common scheme is relevant conduct that counts toward sentence, even if defendant is not convicted of crimes based on that conduct). Actually, he had been tape recorded with truckloads of other stolen goods as well, amounting to about $1.4 million. Sentences for theft under U.S.S.G. § 2B1.1 increase in steps according to the amount of loss. Under the guidelines in effect from November 1992 to November 1993, a $60,000 theft would produce a sentence about one third as long as a $1.4 million theft. Martinez was sentenced to eight months of imprisonment for the stolen toys in October of 1993.

Then in May 1994, the government obtained three indictments, charging Martinez with conspiring with a number of other thieves, to possess $71,000 worth of stolen

fornia, sitting by designation.

**334**

cookie jars, $76,000 of frozen shrimp, $200,-000 of Gap sweaters, and 2,630 Sharp video-cassette recorders worth around $1 million. The tape recordings on which these later indictments were based had been made during 1992, the same time as the truckload of stolen toys. The charges were that Martinez received and possessed stolen goods that had travelled in interstate commerce, in violation of 18 U.S.C. §§ 371, and 659. The statute of limitations on these charges is five years, 18 U.S.C. § 3282, and would not have expired until 1997.

Defendant moved to dismiss the later three indictments because of preindictment delay. To show prejudice from the preindictment delay, defense counsel filed an affidavit saying that she had spoken to the Martinez family, and they "were looking forward to the end of the eight month sentence when they would have Mr. Martinez back at home." She filed a subsequent affidavit saying the AUSA had told her that if they agreed on a plea, he would consider recommending credit for time served and a departure to avoid a higher criminal history category because of the toy theft.

Defendant argued to the district court that because the indictments for the VCR's, shrimp, cookie jars, and sweaters had been delayed, his sentence now might be higher than was fair. The previous conviction for toy theft would raise his criminal history category. U.S.S.G. § 4A1.1. Other things being equal, his guidelines sentence for the $1.4 million would be 24 to 30 months, instead of 21 to 27 months, because of the stolen toys sentence, even though the truckload of stolen toys was part of the same course of conduct as the other stolen goods. If the 24 to 30 months were imposed without adjustment for the 8 months imposed earlier for the stolen toys, he could be exposed to a sentence as long as 30 months subsequent to 8 months already served.

Martinez also argued that he would be prejudiced because he did not get good time credits on his eight month sentence. A prisoner serving "more than one year" generally gets a credit of 54 days "at the end of each year, beginning at the end of the first year" of his term of imprisonment for good time.

18 U.S.C. § 3624(b). Thus, Martinez's eight month sentence did not count toward the one year that must pass before a prisoner can receive good time credits, but it would have counted had he been sentenced to a single term of 21 to 27 months.

In addition, two separate convictions and separate sentences might expose Martinez to harsher sentences if he committed more crimes in the future. Perhaps most ominously, the preindictment delay would have the effect of putting two convictions on his record, so that he would have two strikes instead of one if California adopted the "three strikes" law then under consideration. *See* Cal.Penal Code § 1170.12.

One kind of prejudice affecting trial, as opposed to sentencing, was discussed. At the trial on his 1994 indictments, the government would be able to impeach Martinez's credibility, if he testified, by showing that he had been convicted in the stolen toys case.

The Assistant United States Attorney who caused two of the 1994 indictments to be brought filed an affidavit, in response to defendant's motion to dismiss, explaining the delay. He said that the sting had generated "voluminous" tapes, most of which needed translation and transcription, involving a "large number of criminal acts with distinct sets of codefendants," so there was too much work to assign to a single case agent. The particular AUSA was assigned 27 cases in June 1993, requiring him to listen to tapes and review transcripts, and determine whom to charge with what. This necessitated a number of requests to the FBI to supplement his files with materials referred to in the files but evidently missing. The other 1994 indictment was generated by another AUSA assigned that case in January 1994.

Although the government delayed indicting Martinez with the VCR, cookie jar, and shrimp crimes until seven months after he was sentenced for the toys, and seventeen months after it taped him at the warehouse, the delay was not for tactical purposes. The district judge expressly so found:

> The court finds there's no evidence in the record to support the argument that the delay was intentional; nor is there evi-

dence in the record to support the delay was reckless; nor is there evidence to support the reason for delay was for the government to gain an advantage.

The district court nevertheless found that Martinez had made a showing of actual prejudice and dismissed the indictment. The finding that the delay in the indictments resulted in prejudice was based mostly on the possibility that Martinez's sentence might be increased, because the second group of indictments came after he had been sentenced for the toys, and he could not be sure of getting a plea bargain, departure, or other determination which would avoid sentencing prejudice. The judge concluded that "the sentencing guidelines would dictate a different sentence" for Martinez because his indictment was not returned early enough so that his cases could be tried together. The only way to avoid that would be a departure, which would be "speculative." Also, as defense counsel had pointed out, Martinez's toy conviction could be used as evidence to impeach him in the trial of the later indictments. The judge balanced prejudice against the reasons for delay, and found them outweighed, so she dismissed the 1994 indictments. The United States appeals.

## II. Analysis

■ We review dismissal of an indictment for preindictment delay for abuse of discretion. *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir.1992). "A finding of prejudice is reviewed under the clearly erroneous standard, but in applying this standard, 'we must keep the defendant's heavy burden in mind.'" *Id.* In this case, we conclude that the "heavy burden" was not carried, but on what amounts to a legal rather than a factual basis.

■ On a motion to dismiss an indictment for preindictment delay, the district court cannot balance the reasons for delay against prejudice, until first deciding that

prejudice has been sufficiently proved. *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir.1992). "The task of establishing the requisite prejudice for a possible due process violation is 'so heavy' that we have found only two cases since 1975 in which any circuit has upheld a due process claim." *Id.* at 1290. The briefs do not suggest that the list of preindictment delay challenges successful in the courts of appeal has lengthened since *Huntley*. The statute of limitations, not the due process clause, is generally the protection against preindictment delay.[1] *Id.* The defendant's proof of "actual prejudice" must be "definite and not speculative." Even if there is prejudice, it must, when balanced against the government's reasons for delay, "offend those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *United States v. Sherlock*, 962 F.2d 1349, 1353–54 (9th Cir.1992).

In this case, the defendant did not sufficiently establish prejudice. We therefore do not reach the question of whether the district court's balancing of prejudice against the reasons for delay was within its discretion. *United States v. Breitkreutz*, 8 F.3d 688, 690 (9th Cir.1993). As we examine each element of prejudice, it does not rise to a level implicating the due process clause.

■ The only trial prejudice considered was that the stolen toys conviction would be usable for impeachment under Federal Rules of Evidence 609(a). The possibility that the government will use prior convictions for impeachment purposes is not the type of prejudice that violates principles of due process. *United States v. Pallan*, 571 F.2d 497 (9th Cir.1978).

> In one sense, any piece of probative, admissible evidence acquired by the prosecutor serves to 'prejudice' the defendant's case. Manifestly, this is *not* the type of prejudice that due process principles seek to prevent. On the contrary, due process does not prevent the prosecutor from de-

---

**1.** The parties have argued the case entirely on the basis of the due process clause, not Federal Rule of Criminal Procedure 48(b). The district court did not state whether the dismissal was on the basis of one, the other, or both. Martinez argued Rule 48(b) below, but does not urge it

here, doubtless because "the judge could not properly dismiss under Rule 48(b) without forewarning," and there was no forewarning and "caution" in the special sense in which that word is used for 48(b) dismissals. *See Huntley*, 976 F.2d at 1292.

laying submission to the grand jury in order to acquire additional probative evidence.... While the impeachment use of the state conviction may have somewhat enhanced the government's case, it did not unfairly impair Pallan's ability to defend himself.

*Id.* at 500 (emphasis in original).

■ Martinez's claim of prejudice because of the effect the delay may have on sentences for crimes committed in the future fails under the "definite and not speculative" standard of *Huntley.* It is not "definite" that Martinez will commit more crimes in the future. The risk of a harsher penalty for recidivism requires that he be protected against an unjust conviction or sentence, even if concurrent sentences would avoid immediate injustice, *see United States v. De Bright,* 730 F.2d 1255, 1258 (9th Cir.1984), but this risk does not justify sparing a defendant a just conviction and sentence reflecting past criminal conduct.

■ The effects on the guidelines computation, good time, and consecutiveness of sentences would not be speculative. Martinez did demonstrate with substantial certainty that he would, as a practical matter, assuming his guidelines sentence was imposed in the ordinary course, spend more time in prison because the indictments for the stolen cookie jars, etc. came so long after he had pleaded guilty for the shipment of stolen toys. This was the decisive factor for the district judge. She had a sensible and legitimate concern with fairness to the defendant. We assume for purposes of discussion that a criminal who commits multiple crimes which would ordinarily be grouped for sentencing, *see* U.S.S.G. § 3D1.2., should not do more time just because of the random event that the tape recordings of some of his crimes are on the desk of an especially busy AUSA, or happen to be on the bottom of the pile, while others of his tape recordings are simple and get processed earlier. *But see United States v. Sherlock,* 962 F.2d 1349, 1354 (9th Cir. 1989) (argument that preindictment delay kept defendant from serving his sentence concurrently with a completely separate, earlier rape sentence is "too speculative to establish actual prejudice"); *United States v.*

*Gonzalez–Sandoval,* 894 F.2d 1043 (9th Cir. 1990); *United States v. Valentine,* 783 F.2d 1413, 1417 (9th Cir.1986). We leave aside, because it does not affect the outcome, the possibility that Martinez took this risk with his eyes open, when he obtained the stipulation in the stolen toys case that only the $60,000 stolen toys shipment would be relevant conduct.

Nevertheless, prejudice to Martinez is too speculative to implicate his right to due process. What makes prejudice speculative, even though the sentencing guideline computation is not, is the leeway in the guidelines for departures. The sentencing guidelines are not the procrustean bed sometimes supposed. The commissioners expressly provided for departures which would avoid the kind of unfairness to which Martinez was arguably exposed. There is no actual prejudice in this case because there are two departures which the district court could make to avoid any prejudice, if it determined that there was unfair prejudice because of the timing of the indictments.

As we explained above, when sentenced for the crimes in the 1994 indictments, Martinez would ordinarily be treated as a criminal with a 2 point prior because of the stolen toys sentence. *See* U.S.S.G. § 4A1.1(b). Assuming his offense level is 16 after making all necessary adjustments, the subsequent increase in his criminal history category would yield a 24–30 month sentence instead of a 21–27 month sentence. But the guidelines expressly provide for a departure where the criminal history category "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. The commissioners expressly provided that this ground for departure may apply where the criminal history category "significantly over-represents the seriousness of a defendant's criminal history." U.S.S.G. § 4A1.3, Commentary. If the earlier crime is for conduct which, had it not been for the fortuity of separate indictments, would have been grouped for purposes of sentencing with the later criminal conduct, *see* U.S.S.G. § 3D1.2; *United States v. Fine,* 975 F.2d 596, 599–600 (9th Cir.1992), then

when sentencing for conduct coming under the later indictments, the court could depart downward so that the criminal history category would equal what it would have been without that fortuitous delay.

This still might leave non-speculative prejudice caused by the delay between indictments. Even if the judge departed downward from category II to category I in criminal history, Martinez could still have a 21 to 27 month sentence imposed after he had served eight months, with no good time, instead of the 21 to 27 month sentence with good time he would have received if the 1994 indictments had not been delayed. For that too, if the district judge determines that the groupable nature of the crimes makes the fortuitous extension of the sentence unfair, she can depart downward. Under 18 U.S.C. § 3553(b), a judge may depart from the range specified by the sentence guidelines if she finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by ... the guidelines." *See also* U.S.S.G. § 5K2.0; *United States v. Lira–Barraza*, 941 F.2d 745 (9th Cir.1991). A harsher sentence caused by the fortuity of delay in some indictments of offenses which would be grouped under U.S.S.G. § 3D1.2 is a mitigating circumstance of a kind not taken into consideration by the guidelines, so it would be within the discretion of the district judge to depart downward for this reason. The extent of the appropriate departure would be measured by the reason for it. *See Lira–Barraza*, 941 F.2d at 751.

Because the district judge could avoid any unfairness to Martinez under the guidelines by using permitted departures, prejudice caused by delay, even if we assume that it would otherwise implicate the due process clause, is speculative. The prejudice will only occur if the district judge does not exercise her discretion to depart. That is not likely, if she determines that justice requires departure.

The order dismissing the 1994 indictments is VACATED, and the decision of the district court REVERSED. The case is REMAND-ED for further proceedings consistent with this opinion.