COFFEY, Circuit Judge.
 

 John Schaefer and his brother Charles Schaefer were engaged in a conspiracy to distribute narcotics in southern Illinois. Both were arrested and charged with one count of conspiracy to distribute and possess with intent to distribute cocaine, and one count of conspiracy to distribute and possess with intent to distribute marijuana.
 
 See
 
 21 U.S.C.A. §§ 841(a)(1), 846 (West 1981 & Supp.1996). John pled guilty to both counts, and was sentenced to 97 months’ imprisonment, while his brother Charles pled guilty to the marijuana count, and was sentenced to 84 months of confinement. The government dropped the cocaine count. Both Schaefers appeal their sentences.
 

 I. BACKGROUND .
 

 • In January 1993, John Schaefer began to purchase marijuana and cocaine from John Tappe (“Tappe”). John had organized a conspiracy beginning on or around December 1992 to distribute this marijuana and cocaine throughout southern Illinois. Shortly thereafter, his brother Chuck Schaefer joined him. During the course of their drug dealings, Tappe supplied John with approximately 500 pounds of marijuana, and approximately 11/2 kilograms of cocaine. Much of the marijuana was stored in the woods near a “stash” house in a rural area, where Charles and Marty Boling, another member of the conspiracy, lived. Charles delivered most of the 500 pounds of marijuana acquired by John to the dealers John was supplying.
 

 On March 23, 1993, John was arrested by Illinois State Police and charged with possession with intent to deliver marijuana. He was convicted by a jury, and sentenced to seven years’ incarceration on the state charge. After John was imprisoned on the state charge, his brother Charles assumed John’s position in the conspiracy, and began purchasing marijuana directly from Tappe. Shortly thereafter, Charles was arrested on two Illinois state narcotics charges, and sentenced to 30 months’ imprisonment. At the time of his sentencing (February 2, 1996) on the federal charge at issue here, Charles was on release from prison on the Illinois state charges having served 11 months.
 

 Prior to entering prison on the Illinois charges, Charles turned over approximately $18,400 in narcotics proceeds to Larry Bur-man (“Burman”), another member of the conspiracy. The bulk of this money (approximately $15,400) represented sales of drugs that had been “fronted” by Tappe to Charles. Charles directed Burman to deliver the money to Tappe in payment for the fronted narcotics.
 

 John while in prison learned of the $18,400, and contacted James Meredith (“Meredith”), another dealer whose drug source was also Tappe. John asked Meredith to come to southern Illinois to pick up the $15,400 owed to Tappe. At this time, John, while in prison, also contacted Burman, and requested that Burman deliver the $15,400 to Meredith.
 
 *-301
 
 Jenny Schaefer, wife of John, accompanied Meredith to meet Burman, and Burman ultimately gave the $15,400 to Meredith, and turned $1,000 over to Jenny Schaefer. In his instructions to Meredith, John also directed Meredith to reinvest the remaining $2,000 of the $18,400 into the drug operation to continue the conspiracy.
 

 At his sentencing, John claimed that he directed these deliveries because, after he learned that Tappe had not been paid the $15,400, he was fearful that Tappe might retaliate against his family. The government asserted that it was John’s intent to further the conspiracy by directing Meredith to use the extra money ($2,000) to purchase more narcotics. During a meeting between Meredith, then working for the government, and John, who was confined as a result of his state sentence, Meredith reported that John had, in addition to directing Meredith to use the extra money to purchase narcotics, also told him that he (John) knew of dealers other than Tappe should he find difficulty in finding supply sources.
 
 [1]
 
 The district judge concluded that the Sentencing Guidelines required that John’s federal sentence run consecutive to his state sentence, since he had acted in furtherance of the conspiracy while confined by directing delivery of the $18,400 from Burman to Meredith, as well as ordering that $1,000 of the drug proceeds be turned over to his wife. Thus, the trial judge sentenced John Schaefer to an additional 97 months’ imprisonment on the federal charge, to run consecutive to his state charge.
 

 During his sentencing hearing, Charles Schaefer testified to his own involvement in the conspiracy and challenged the government’s claim that he was involved in the pinchase and distribution of over 100 kilograms of marijuana, stating thát the total amount of marijuana with which he had been involved was about 131 pounds, well under 100 kilograms.
 
 [2]
 
 His testimony was contradicted by the testimony of FBI Agent Ron Bratcher, who testified that, based upon his interview with John Schaefer, John had told him that most of the 500 pounds of marijuana that he received from Tappe had been distributed by Charles.
 

 As part of Charles’ plea arrangement, the government agreed to and did recommend a three-level reduction in his criminal offense level because of his acceptance of responsibility. The district court disagreed and concluded that Charles had attempted to “minimize” his role in the conspiracy and had testified untruthfully. Based upon this finding, the district court refused to grant Charles any reduction for acceptance of responsibility, and imposed a sentence of 84 months’ imprisonment. The district court also rejected Charles Schaefer’s argument that he should receive credit for the 11 months he had previously served on the state narcotics charges.
 
 [3]
 

 II. ISSUES
 

 On appeal, John Schaefer argues that his case should be remanded for resentencing because the district judge erroneously believed the Sentencing Guidelines gave him no discretion to order that his federal sentence run concurrent with his state sentence. Charles Schaefer argues that the district judge erred in not crediting him with his previously-served 11 month state sentence on related narcotics distribution charges toward the 84 month federal sentence he received. Charles also challenges the district court’s refusal to grant him a three-level offense reduction for acceptance of responsibility.
 

 III. DISCUSSION
 

 A. The Sentencing of John Schaefer
 

 Prior to John’s sentencing, the government objected to a recommendation in the presen-
 
 *-300
 
 tence report (PSR) that his sentence run concurrent with the state sentence he was then serving. The recommendation in the PSR was based on the fact that the state conviction and sentence had been imposed for the delivery of marijuana that was part and parcel of the same drug conspiracy for which he was being sentenced in the federal ease. The PSR recommended concurrent sentencing under § 5G1.3(b) of the Guidelines, which provides that when a defendant is subject to an “undischarged term of imprisonment” for an offense that has “been fully taken into account in the determination of the offense level for the instant offense,” the sentence for the instant offense is to run concurrent with the undischarged term of imprisonment.
 

 The government objected to the PSR and argued that § 5G1.3(a) should apply. Subsection 5G1.3.(a) provides that, where the instant offense “was committed while .the defendant was serving a term of imprisonment,” the sentence for the instant offense is to be served consecutive to the undischarged sentence. The government based its argument for the applicability of subsection (a) on the fact that John Schaefer, by calling Meredith and Burman from prison and directing Burman to deliver the $18,400 to Meredith, acted in furtherance of the conspiracy while he was in prison for the state narcotics conviction, and on the fact that subsection (b), by its terms, only applies “if subsection (a) does not apply.”
 
 [4]
 

 The issue presented by the parties to the court was whether, for purposes of application of subsection (a), the fact that the state offense for which John Schaefer was serving his “undischarged term of imprisonment” when he “committed” the federal offense was related to the federal offense, precluded the applicability of subsection (a). In other words, the question before the district court was whether subsection (a) applied where the prior offense and the instant offense were related. The district court determined that, since nothing in subsection (a) stated that subsection (a) was inapplicable when the offenses were related, it applied notwithstanding the fact that the offenses were related.
 

 More important for our purposes, the trial judge also articulated his belief that his discretion was limited by subsection (a) to the imposition of a consecutive sentence. John Schaefer has argued in his brief as well as at oral argument that the district court erroneously believed that the language in subsection (a) that the court “shall” order consecutive sentences meant that it had no discretion to order that his sentence be served concurrent with his state sentence. The government, while initially asserting in its brief that the district judge did not erroneously believe he lacked such discretion, stated later in its brief that there was at least one passage in the sentencing transcript that may have indicated that the court might have believed it lacked discretion to order concurrent sentences.
 
 [5]
 
 Further, counsel for the government conceded at oral argument that there were passages in the transcript indicating that the district judge concluded he lacked discretion to impose anything other than a consecutive sentence.
 

 Since it is not disputed by the parties, we assume for the sake of analysis that the district judge concluded that the mandatory “shall” in § 5G1.3(a) compelled him to order consecutive sentencing. Further, the parties do not dispute on appeal that, even when sentencing under § 5G1.3(a), district judges retain discretion to impose concurrent sentences. But John failed to raise this issue before the trial court at the time of sentencing. Because he failed to timely raise this issue, he has waived this issue for purposes of appeal, and we review this claim under the “plain error” standard.
 
 United States v.
 
 
 *-299
 

 Maggi,
 
 44 F.3d 478, 484 (7th Cir.1995);
 
 see United States v. Rosalez-Cortez,
 
 19 F.3d 1210, 1220 (7th Cir.1994). Under the “plain error” standard, we conclude that, even assuming that the district judge erred, any error committed was not of sufficient magnitude to justify a remand.
 

 Both parties agree that § 5G1.3(a), by its very terms, states that a district court “shah” impose a consecutive sentence when the current offense was committed while the defendant was incarcerated. However, 18 U.S.C. § 3584(a), which addresses “multiple terms of imprisonment,” states that “if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment,
 
 the terms may run concurrently or consecutively”
 
 (emphasis added). The question presented is how to balance these two provisions so that they are not in conflict, as the use of the mandatory “shall” in § 5G1.3(a) would appear to take away a district court’s discretion to order concurrent sentencing, while § 3584(a) appears to specifically provide that a district court has discretion to order either concurrent or consecutive sentences. To the extent that a provision in the Sentencing Guidelines conflicts with a statutory provision, the statute controls.
 
 See, e.g., United States v. Holloway,
 
 991 F.2d 370, 374 (7th Cir.1993).
 

 The Seventh Circuit has not specifically decided this issue.
 
 [6]
 
 However, in a line of cases beginning with
 
 United States v. Fossett,
 
 881 F.2d 976 (11th Cir.1989), those circuits that have considered the issue have concluded that district courts retain the dis-eretion to order concurrent sentences pursuant to § 3584(a) notwithstanding the apparently mandatory language in § 5G1.3(a). The majority of those circuits that have resolved the question have done so by reaching the conclusion that, while § 5G1.3(a) creates a presumption in favor of a consecutive sentence, sentencing judges are free to depart from the Guidelines and order a downward departure, so long as they comply with the procedures required for downward departures in general outlined in 18 U.S.C. § 3553(c)(2).
 
 [7]
 
 This provision requires that, when a district court departs from the Guideline sentence, it must set forth the “specific reason” why it has opted to do so. In effect, to order a concurrent sentence despite the applicability of § 5G1.3(a), the district court must specifically articulate the reasons why it believes the particular case falls outside the Guidelines’ “heartland.”
 
 United States v. Flowers,
 
 995 F.2d 315, 317 (1st Cir.1993). When considering whether the case is outside the “heartland,” the district judge must take into account the applicable provisions and policy statements in the Sentencing Guidelines, and may only depart if the judge “finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and that should result in a sentence different from that described.” 18 U.S.C. § 3553(b);
 
 see Fossett,
 
 881 F.2d at 980.
 

 Both parties have urged that we adopt the rationale of the majority of the circuits that follow the
 
 Fossett
 
 line of cases,
 
 *-298
 
 and we agree.
 
 [8]
 
 Thus, we hold that, when sentencing a defendant to whose sentence § 5G1.3(a) applies, district courts retain the discretion to order a concurrent sentence under § 3584(a); however, to do so, the judge must consider the factors enumerated under § 3553(a) and specifically set forth the reasons for ordering the departure under § 3553(c)(2).
 

 Thus, assuming for the purpose of analysis only that the district judge believed he was without discretion to order concurrent sentences, his belief was in error. However, it is also true, under the analysis we adopt today, that John Schaefer would have received the same consecutive sentence he in fact did receive absent a decision by the trial court to depart downward. Under the “plain error” standard of review, we reverse “only when [we are] convinced that it is necessary to avert an actual miscarriage of justice.”
 
 United States v. Jackson,
 
 974 F.2d 57, 60 (7th Cir.1992) (quoting
 
 United States v. Silverstein,
 
 732 F.2d 1338, 1349 (7th Cir.1984)). In the plain error context, it is the defendant who bears the burden of demonstrating prejudice.
 
 United States v. Olano,
 
 507 U.S. 725, 734, 113 S.Ct. 1770, 1777-78, 123 L.Ed.2d 508 (1993);
 
 United States v. Guyton,
 
 36 F.3d 655, 660 (7th Cir.1994) (quoting Olano);
 
 see generally
 
 Fed.R.Crim.P. 52(b). Based on the record we are of the opinion that John Schaefer has failed to demonstrate that he suffered any prejudice in his sentence, since he has failed to convince us that the district judge would have departed downward in imposing John’s sentence.
 

 John Schaefer’s main argument is that, because the district judge appeared to view the imposition of consecutive sentences as “extremely harsh,” he would have departed downward and imposed a concurrent sentence had he been convinced that he had the discretion to do so. The law is quite clear that a district judge’s personal belief that a Guideline sentence is too harsh is an insufficient basis upon which to predicate a downward departure, and we have consistently reversed downward departures based upon such belief.
 
 See, e.g., United States v. Frazier,
 
 979 F.2d 1227, 1231 (7th Cir.1992);
 
 United States v. Carey,
 
 895 F.2d 318, 325-26 (7th Cir.1990);
 
 see generally United States v. Correa,
 
 995 F.2d 686, 687 n. 1 (7th Cir.1993) (“[A] judge’s personal disagreement with the Guidelines cannot provide a reasonable basis for sentencing.”);
 
 United States v. Newman,
 
 965 F.2d 206, 213 (7th Cir.1992) (departure from Guideline range “must be based on policies found in the guidelines themselves rather than the personal penal philosophy of the sentencing judge”). If the trial judge had departed downward and imposed a concurrent sentence in this case based solely on his personal belief that the consecutive sentence called for under the Guidelines was too harsh, we would have reversed that sentence as well. We conclude that John Schaefer cannot claim prejudice from his consecutive sentence based ón his contention that the district judge would have departed downward and imposed a concurrent sentence on the basis that the judge thought the sentence was too harsh in John’s case.
 
 [9]
 

 John Schaefer has cited a number of eases from this circuit in which we remanded under the plain error standard for resentencing when the trial judge has been alleged to have been guilty of a misapplication of the Guidelines. These cases are distinguishable.
 
 United States v. Maggi,
 
 44 F.3d 478 (7th
 
 *-297
 
 Cir.1995), involved the failure of a district court to grant a sentence reduction under a provision of the Guidelines which
 
 mandated
 
 such a decrease. We remanded under the plain error review standard for a factual determination as to whether the defendant met the criteria necessary for the decrease, since we concluded that the “possible misapplication” of the Guidelines resulted in the failure of the defendant to receive a mandatory decrease in sentence to which he was entitled. 44 F.3d at 484 n. 5, 485. Here, the defendant has failed to establish that the trial judge committed any error which would entitle him to a reduction in his sentence.
 

 In
 
 United States v. McFarland,
 
 37 F.3d 1235 (7th Cir.1994), the panel did not state that it was engaging in plain error analysis, and never discussed the question of prejudice. The case fails to support John Schaefer’s arguments concerning the prejudice he must show in the plain error context. Finally, in
 
 United States v. Brassell,
 
 49 F.3d 274 (7th Cir.1995), this court was faced with a defendant who, like John Schaefer, was still serving a state prison sentence at the time he was being sentenced for a federal crime. In that case, we remanded for resentencing because the district court did not state why it opted to order that its sentence run consecutive to the state sentence. However,
 
 Bras-sell
 
 addressed sentencing under § 5G1.3(e), instead of § 5G1.3(a). Under subsection (c), unlike subsection (a), the sentencing court does not presumptively impose a consecutive sentence. Instead (under the 1993 version of the Guidelines used in
 
 Brassell),
 
 the court attempted to fashion a sentence that roughly approximated what the defendant would have, received if he were being sentenced for all of the offenses at the same time. Since the district court in
 
 Brassell
 
 did not demonstrate that it had considered what such a sentence would have been, we remanded so that the sentencing judge could state the reasons why he felt consecutive sentencing was appropriate. Again, in the instant ease, the imposition of a consecutive sentence was required under subsection 5G1.3(a) unless the district judge opted to depart downward to impose the concurrent sentence John Schaefer was seeking. We refuse to mandate that a trial judge state reasons for opting
 
 not
 
 to depart downward from the Guideline range,
 
 United States v. Cureton,
 
 89 F.3d 469, 474 (7th Cir.1996)
 
 (citing United States v. Abbott,
 
 30 F.3d 71, 73 (7th Cir.1994)), .and no case has been cited to us from this or any other circuit in which such an explanation was required when a sentencing judge refused to depart downward in a circumstance similar to John’s. We conclude that
 
 Brassell,
 
 which addressed sentencing under a different subsection of § 5G1.3 that did not require consecutive sentencing absent a downward de-' parture, does not compel a remand for John.
 

 The defendant further argues that, had the district judge believed that he could order concurrent sentencing, he could have considered the relative length of the sentence received by Tappe (18 years), as well as the faet that the crime for which John was being sentenced was related to the crimes for which he was previously incarcerated, as reasons justifying a downward departure. These arguments amount to speculation about what the district court might have done; however, from our examination of the record we are not convinced that the trial court had any intention of imposing a lesser sentence on John. In fact, Chief Judge Gilbert made that clear when he stated that John was getting a “break” by virtue of the fact that he was imposing a sentence at the low end of the Guideline range. Tr. at 30.
 

 John Schaefer, in a self-serving unsupported assumption, argues that this comment reflected Chief Judge Gilbert’s intention to order concurrent sentencing had he felt he had the power to do so. However, it is more plausible that Chief Judge Gilbert was expressing the view that, had concurrent sentencing been
 
 required
 
 under the Guidelines pursuant to § 5G1.3(b) (as John argued), he would have sentenced the defendant to the maximum end of the Guideline range. This comment does not suggest that Chief Judge Gilbert felt that a
 
 discretionary
 
 downward departure was appropriate. At the very least, it does not support a conclusion that the “fairness, integrity or public reputation” of this sentencing was compromised by any error, which is required for us to grant relief under the “plain error” stan
 
 *-296
 
 dard.
 
 Olano,
 
 507 U.S. at 736, 113 S.Ct. at 1778-79 (quoting
 
 United States v. Atkinson,
 
 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). John Schaefer has failed to refer us to anything in the record which might suggest that Chief Judge. Gilbert would have been inclined to depart downward in his sentencing, and we therefore conclude that he has not satisfied his burden of demonstrating prejudice under the “plain error” standard.
 

 B. The District Court’s Refusal to Grant Charles Schaefer Credit for an Expired State Sentence
 

 At his sentencing hearing, Charles Schaefer testified that he had previously served 11 months in an Illinois state prison on convictions arising from distribution of the same marijuana which gave rise to the federal convictions.
 
 [10]
 
 Based upon this, Charles’ counsel requested the trial judge, under § 5G1.3 of the Sentencing Guidelines, to give the defendant credit for the 11 months served under those state convictions. The district court concluded that, because Charles had been released from custody on those convictions by the time he appeared before the district judge for sentencing in the present offenses, § 5G1.3 did not apply, and the court refused to give Charles any credit for those 11 months. On appeal, the government argues that this amounted to a discretionary refusal to grant a downward departure, which is unreviewable. We agree and dismiss this portion of Charles’ appeal.
 

 Section 5G1.3, by its terms, applies when a court is sentencing a defendant “subject to an- undischarged term of imprisonment.” Under subsection (b), when a trial judge is sentencing a defendant who is still serving prison time from an offense that has “been fully taken into account in the determination of the offense level for the instant offense,” the judge is to order that the defendant’s sentence run concurrently with the undischarged term of imprisonment.
 
 United States v. Bell,
 
 28 F.3d 615, 618-19 (7th Cir.1994).
 

 However, Charles had completed his state incarceration at the time he was before the court for sentencing in the instant offense. In
 
 United States v. Blackwell,
 
 49 F.3d 1232, 1241 (7th Cir.1995), this court was faced with an issue similar to the one presented here. Prior to being sentenced, the defendant in
 
 Blackwell
 
 had completed a term in another federal prison for conduct related to the same conspiracy for which he was then being sentenced. The defendant argued that, because his previous sentence was for conduct related to the conduct for which he was then being sentenced, he should receive credit for the time served under the previous sentence. This court concluded that, because the defendant had completed his previous sentence prior to the time of his subsequent sentencing, section 5G1.3 “on its face does not apply to [the defendant]” because he “had no relevant ‘undischarged term of imprisonment’ ” at the time of sentencing. 49 F.3d at 1241. Since Charles had likewise completed his sentence prior to the current sentencing, and had no “undischarged term of imprisonment,” we conclude that section 5G1.3 simply does not apply to his case.
 
 [11]
 

 Thus, like the defendant in
 
 Black-
 
 _
 
 well,
 
 Charles’ request that he be given credit for his previously-expired state sentence was in effect a request for a downward departure. The law of this circuit is clear that the discretionaiy denial of such a request is not reviewable on appeal.
 
 Blackwell,
 
 49 F.3d at 1241
 
 (citing United States v. Harris,
 
 994 F.2d 412, 414-415 (7th Cir.1993);
 
 United
 
 
 *-295
 

 States v. Poff,
 
 926 F.2d 588, 590-91 (7th Cir.1991) (en banc));
 
 see also United States v. Rios-Calderon,
 
 80 F.3d 194, 198 (7th Cir. 1996);
 
 United States v. Yahne,
 
 64 F.3d 1091, 1094 (7th Cir.1995). Therefore, we agree with the government that we may not review this issue, and we dismiss this portion of Charles Schaefer’s appeal.
 

 C. The District Court’s Refusal to Grant Charles Schaefer a Three-Level Sentence Reduction for Acceptance of Responsibility
 

 Charles argues finally that the district court erred in not granting him a three-level offense reduction for acceptance of responsibility. The government counters that the district court’s refusal to grant Charles Schaefer any such reduction was within the district court’s discretion, and we agree.
 

 Under the Sentencing Guidelines, a defendant may receive a reduction in his offense level when and only if he “clearly demonstrates acceptance of responsibility for his offense.” U.S.S.G. § 3E1.1(a). Pleading guilty to the offense may serve to demonstrate acceptance of responsibility on the part of the defendant; however, it does not necessarily do so.
 
 United States v. Panadero,
 
 7 F.3d 691, 694 (7th Cir.1993)
 
 (citing
 
 U.S.S.G. § 3E1.1, App.Note 3). Whether a defendant has fully accepted responsibility for his offense is a finding of fact to be made by the trial court, and is based largely on the district judge’s determinations regarding the defendant’s credibility and conduct bearing upon the question of whether the defendant has in fact accepted responsibility. Id.;
 
 see also United States v. Jones,
 
 55 F.3d 289, 294 (7th Cir.),
 
 cert. denied,
 
 — U.S. —, 116 S.Ct. 161, 133 L.Ed.2d 104 (1995). Thus, we review the district court’s conclusion concerning whether to credit a defendant for acceptance of responsibility under the deferential “elearly erroneous” standard.
 
 Jones,
 
 55 F.3d at 294;
 
 United States v. Rosalez-Cortez,
 
 19 F.3d 1210, 1218 (7th Cir.1994). To succeed on appeal, a defendant must demonstrate that the district court’s conclusion denying him credit for acceptance of responsibility was “without foundation.”
 
 Panadero,
 
 7 F.3d at 694
 
 (quoting United States v. White,
 
 993 F.2d 147, 151 (7th Cir.1993)).
 

 During his sentencing hearing, Charles testified that he personally only received less than 100 pounds of marijuana from John, and that his total involvement in the conspiracy amounted to about 131 pounds. This testimony was flatly contradicted, however, by the testimony of Agent Bratcher, who testified as to John’s claim that “most” of the 500 pounds of marijuana he received from Tappe was distributed by Charles, and the court found that Bratcher’s testimony was more credible than Charles’. The stipulation of facts in John Schaefer’s case, which stated that Charles delivered “most” of the marijuana supplied to John Schaefer by Tappe, was introduced during Charles’ sentencing hearing, and also indicated a greater level of involvement on the part of Charles than he had testified to. Finally, Agent Bratcher testified that Charles was involved in four quarter-pound deliveries to a confidential informant in November 1993. Charles initially denied involvement in all but one of those deliveries, but later admitted that he was “present” at all four deliveries, though he still claimed not to have been involved in the “hand-to-hand” deliveries.
 

 After hearing Charles Schaefer’s testimony and considering the totality of all other evidence adduced at the hearing in contradiction of his testimony, the district judge concluded that Charles’ testimony was less credible than the conflicting evidence, and stated that Charles was “trying to minimize his involvement in this marihuana conspiracy.” The judge expressed concern about granting the reduction for acceptance of responsibility in light of Charles’ colored and less than truthful testimony. The judge noted that acceptance of responsibility requires that a defendant not falsely deny any relevant conduct,
 
 see
 
 U.S.S.G. § 1B1.3, and concluded that Charles did not qualify for the reduction. The trial court was faced with a question of credibility, and it resolved the question adversely to Charles and in favor of the testimony of Agent Bratcher. Given Charles Schaefer’s repeated denial of conduct related to the conspiracy, in the face of contradictory evidence, which the district
 
 *-294
 
 court was certainly entitled to believe, we cannot say that the district judge’s denial of the reduction for acceptance of responsibility was “without foundation;” indeed, it was well within the district judge’s discretion.
 

 IV. CONCLUSION
 

 The judgment of the district court is Affirmed as to John Schaefer, and Affirmed In Part as to Charles Schaefer. We dismiss the remainder of Charles Schaefer’s appeal.
 

 [1]
 

 . Meredith was wearing a wire during this meeting, but the wire malfunctioned.
 

 [2]
 

 . The record does not reflect precisely how many kilograms are equal to 131 pounds. However, the record does contain the information that 1 kilogram is equal to approximately 2.2 pounds. Using this conversion factor, we have calculated that 131 pounds is equal to approximately 59.5 kilograms.
 

 [3]
 

 .As noted
 
 infra
 
 n. 10, it is not clear from the record whether Charles' state narcotics convictions were related to the conspiracy at issue in this case.
 

 [4]
 

 . John Schaefer was sentenced under the 1994 version of the Guidelines. The text of subsection (a) was not changed in the 1995 version, but the language in the commentary was, as noted
 
 infra
 
 n. 8.
 

 [5]
 

 . The government cited the following passage, where the court stated:
 

 ”[T|his court is going to sentence you pursuant to the recommendation of the government and what is called for in the plea agreement to 97 months in the Bureau of Prisons. But I want to tell you the only reason I’m doing that is because of this fact, that I'm going to have to do it consecutive and not concurrent with your state offense.”
 

 [6]
 

 . This court has noted the issue in cases where it was not necessary to resolve it, most recently in
 
 United States v. Kezerle,
 
 99 F.3d 867 (7th Cir. 1996). In that case, we concluded that the record showed that the district court believed it had discretion to order concurrent sentences, so we did not need to resolve the issue of whether it would have been erroneous for the district court to have concluded that it did not have such discretion.
 

 [7]
 

 . In addition to
 
 Fossett,
 
 see
 
 United States v. Flowers,
 
 995 F.2d 315, 316-17 (1st Cir.1993);
 
 United States v. Gullickson,
 
 981 F.2d 344, 349 (8th Cir.1992);
 
 United States v. Shewmaker,
 
 936 F.2d 1124, 1128 (10th Cir.1991);
 
 United States v. Pedrioli,
 
 931 F.2d 31, 32 (9th Cir.1991);
 
 United States v. Stewart,
 
 917 F.2d 970, 973 (6th Cir. 1990);
 
 United States
 
 v.
 
 Miller,
 
 903 F.2d 341, 349 (5th Cir.1990);
 
 United States v. Rogers,
 
 897 F.2d 134, 137 (4th Cir.1990).
 
 But see United States v. Nottingham,
 
 898 F.2d 390, 393-95 (3d Cir.1990);
 
 United States v. Wills,
 
 881 F.2d 823, 826-27 (9th Cir.1989) (both holding that § 3584(a) squarely conflicts with § 5G1.3(a), and that the former controls).
 

 In addition to this circuit, the Second Circuit has not decided this issue.
 
 See United States v. Whiteley,
 
 54 F.3d 85, 89 n. 2 (2d Cir.1995). The D.C. Circuit as well has not had opportunity to resolve this issue. The most recent case our research reveals addressing this issue is
 
 United States v. Lastra,
 
 973 F.2d 952 (D.C.Cir.1992).
 

 [8]
 

 . The commentary to § 5G1.3 in the 1995 version of the Guidelines manual was amended to state that, where a defendant is subject to an undischarged term of imprisonment, the district court "generally has authority” to impose a concurrent sentence (citing § 3584(a)). The amendment goes on to say that in exercising this authority, courts must consider "the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission." As this is consistent with the
 
 Fossett
 
 approach, it appears that the Sentencing Commission views the
 
 Fossett
 
 approach favorably.
 

 [9]
 

 . We also observe that it is not that clear that Chief Judge Gilbert’s statement that the sentence he was imposing was "extremely harsh” suggests that he would have departed downward to impose a concurrent sentence. Rather, as counsel for the government argued during the sentencing hearing, and as Chief Judge Gilbert acknowledged during sentencing, the Guidelines
 
 intend
 
 harsh results for criminals who choose to continue to participate in criminal enterprises while incarcerated.
 

 [10]
 

 . As the government points out in its brief, it is not clear from the record that Charles Schaefer's state narcotics convictions were in fact based upon the same marijuana conspiracy giving rise to the federal charges. Nevertheless, for the salce of discussion, we will assume that the convictions did arise from the same marijuana.
 

 [11]
 

 . Charles’ brief contains a self-serving unsupported allegation that prosecutorial delay caused his sentencing to be delayed until after his state sentence was completed. It is not clear from the record whether a significant period of time elapsed between the time Charles finished serving his state sentence and the time he was sentenced on the federal charges, but as he has failed to point us to anything in the record which suggests the existence of prosecutorial delay in the first place, we refuse to speculate about whether any alleged delay might have affected the relationship between his sentencing date and the expiration of his state prison term.