In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-1410

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANTHONY R. DOTE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00-CR-342-1—**James B. Moran**, *Judge.*

ARGUED DECEMBER 4, 2002—DECIDED MAY 13, 2003

Before FLAUM, *Chief Judge*, and COFFEY and WILLIAMS, *Circuit Judges*.

COFFEY, *Circuit Judge*. On April 27, 2000, Anthony R. Dote was indicted on charges of engaging in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), operating an illegal gambling business, in violation of 18 U.S.C. § 1955, and engaging in interstate travel in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952. He pled guilty to all counts in the indictment. At sentencing, the court concluded that it lacked authority to enter a downward departure from the Sentencing Guidelines range (51 to 63 months) and sentenced Dote to 51 months in prison, as well as three years of supervised release. We affirm.

*I.   Background*

On November 17, 1994, a federal grand jury indicted Dote on charges of illegal bookmaking and RICO violations that occurred between 1978 and 1992. The November 1994 indictment (the "First Indictment") alleged that Defendant and two others, Marco Damico and Robert M. Abbinati, perpetrated racketeering and gambling crimes through an organization that will herein be referred to as the "Dote-Damico Enterprise." Dote pled guilty to the charges set forth in the Indictment, and, on September 13, 1996, was sentenced by Judge Blanche M. Manning to 51 months in prison.

Unbeknownst to the court, at the time of Dote's September 1996 sentencing, Dote had been participating in a second illegal gambling business, the "Dote-Mazza Enterprise," since July of 1994. Although the Government had knowledge of Dote's new bookmaking enterprise at the time of Dote's September 1996 sentencing before Judge Manning, it did not disclose, either to Dote or to the court, its investigation of Dote's participation in the Dote-Mazza Enterprise at that time. Instead, the Government waited approximately four years to present its evidence to a grand jury, which issued an indictment against Dote on April 27, 2000.

Similar to the November 1994 indictment, the April 27, 2000 indictment (the "Second Indictment") charged Dote with racketeering and illegal bookmaking. According to the facts set forth in the Second Indictment, Dote continued to engage in the Dote-Mazza Enterprise's illegal bookmaking activities until as late as August of 1997 (some nine or more months after his October 29, 1996 incarceration, and over ten months after his September 1996 sentencing by Judge Manning). Although similar in nature to the allegations in the First Indictments, the unlawful conduct alleged in the Second Indictment was otherwise

distinct and separate from the activities charged in the First Indictment, insofar as the Dote-Mazza Enterprise involved different co-conspirators than the Dote-Damico Enterprise (namely, Francis Patrick Mazza, Donald F. Scalise, Carl R. Dote, Jack Cozzi, Frank J. Adamo, and Sherman Goldman), and took place over a different time period (from July 1994 through August 1997).

Appearing before District Judge James B. Moran, Dote moved to dismiss the Second Indictment, arguing that the Government's delay in issuing the Second Indictment violated his Sixth Amendment right to a speedy trial. The court denied Defendant's motion to dismiss the indictment on this basis, because the "Sixth Amendment right to a speedy trial is only triggered by an arrest, indictment or other official accusation." *United States v. Dote*, No. 00-CR-342-1 at 2 (N.D.Ill. Feb. 6, 2001). Thus, the court determined that Dote's allegations of *pre-indictment* delay did not implicate his Sixth Amendment rights.

The court also considered whether the delay violated Dote's Fifth Amendment right to due process, but ultimately concluded that no violation had occurred, because no prejudice resulted from the Government's delay in obtaining the Second Indictment. The Court noted that Dote failed to meet his burden of "particulariz[ing]" the nature of the prejudice he claimed to have suffered on account of the delay, and also failed to establish that such prejudice was "certain." *Id.* at 5. The court opined that, in any case, it did "have the discretion to take [a] departure[ ] if appropriate," implying that, at the sentencing stage, it would consider whether to apply a downward departure on account of Dote's complaints regarding pre-indictment delay. *Id.* at 6.

On June 26, 2001, Dote pled guilty to the charges set forth in the April 27, 2000 Indictment, namely, racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), operation

of an illegal gambling business, in violation of 18 U.S.C. § 1955, and engaging in interstate travel in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952. At sentencing, Dote moved the court for a downward departure, which the sentencing judge denied because, in his words: "I don't think I have the authority to downwardly depart" under the facts in this case. Sent. Tr. at 8. Dote was sentenced at the low end of the Guidelines range (51 to 63 months) to 51 months in prison and three years of supervised release.

## II. *Analysis*

Dote claims that he was entitled to a downward departure based on the Government's pre-indictment delay. Specifically, he argues that the Government's failure to alert the September 1996 sentencing court to his participation in the Dote-Mazza Enterprise resulted in an "installment plan" prosecution of his bookmaking crimes that prevented him from receiving a "single enhanced sentence" at his September 1996 sentencing.[1] Dote relies on *United States v. Martinez*, 77 F.3d 332 (9th Cir. 1996), to support his contention that he was entitled to a downward departure at his February 2002 sentencing based on the Government's pre-indictment delay. He claims that if the Government had disclosed its investigation of the Dote-

---

[1] Under Dote's "installment plan" analogy, the "first installment" was the First Indictment that charged him with bookmaking and RICO violations associated with the Dote-Damico Enterprise, and the "second installment" was the Second Indictment that charged him with bookmaking and racketeering crimes connected to the Dote-Mazza Enterprise. Dote argues that he should have been sentenced based on both series of crimes (*i.e.*, the Dote-Damico Enterprise and the Dote-Mazza Enterprise), simultaneously, at the September 1996 sentencing.

Mazza Enterprise during the September 1996 sentenc-
ing hearing he might have received a "single enhanced
sentence" insofar as the sentencing court could have
ordered the sentences for the two sets of crimes (Dote-
Damico Enterprise and Dote-Mazza Enterprise) to be
served concurrently, or could have assessed his subsequent
illegal activities (Dote-Mazza Enterprise) as relevant
conduct. Dote's Br. at 13. *See also* Dote's Downward
Departure Br. at 3 ("Had the government disclosed to the
September 1996 sentencing court Anthony Dote's [most
recent] purported bookmaking activity, that court would
have incorporated Dote's [mis]conduct while imposing a
single sentence.") (brackets in the original).[2]

---

[2] Although Dote did not argue as much before the sentencing
court, or even on appeal, the Government noted at oral argu-
ment that Dote could have argued that the Government's delay
in issuing the indictment precluded him from obtaining a concur-
rent sentence under § 3584(a) insofar as he was no longer
incarcerated on the first charges by the time he was sentenced
as to the Second Indictment.

Under § 3584(a), a district court *may* order a sentence be served
concurrently to any undischarged sentence still being served by
a defendant. However, as we held in *Schaefer*, "§ 5G1.3(a) [of the
Sentencing Guidelines] creates a presumption in favor of a
*consecutive* sentence," in cases such as Defendant's, "where the
instant offense 'was committed while the defendant was serv-
ing a term of imprisonment' for an offense that has 'been fully
taken into account in the determination of the offense level for the
instant offense'. . . ." *United States v. Schaefer*, 107 F.3d 1280,
1284-85 (7th Cir. 1997) (quoting U.S.S.G. § 5G1.3(a)). Therefore,
to order that a prison sentence run concurrent to an undischarged
sentence on a prior charge, a sentencing court must "specifical-
ly articulate the reasons why it believe[s] the particular case
falls outside the Guidelines' 'heartland.'" *Schaefer*, 107 F.3d
at 1285.

(continued...)

In light of Dote's reliance on *United States v. Martinez* to support his application for a downward departure, a brief review of the case is in order. In *Martinez*, the defendant Martinez was initially indicted in June 1993 on a charge of possession of stolen property. At his sentencing hearing, held in October of 1993, the court assessed Martinez's relevant conduct at $60,000 worth of stolen toys, *id.*, and sentenced him to eight months' imprisonment. Unbeknownst to the sentencing court, Martinez—at the same time he perpetrated the toy theft—was also caught on tape (by authorities) transporting truckloads of other stolen goods that totaled around $1.4 million in merchandise (stolen Gap sweaters, Sharp videocassette recorders, etc.). Despite the fact that Martinez's toy theft was part of the same scheme and course of illegal conduct as his theft of the other goods, the Government did not obtain an indictment based on the additional $1.4 million in stolen goods until May 1994. The only explanation for the Government's separate prosecution of the related thefts was that the tape recordings of the thefts named in the May 1994 indictment had been given to an overworked

---

[2]  (...continued)

But the Defendant failed to even mention Section 3584(a) before the district court (or, for that matter, in his main brief on appeal), and we do not agree that the district court's failure to depart on such basis was plain error. *See Schaefer*, 107 F.3d at 1284-85 (where a defendant fails to timely raise an issue, he has waived the issue for purposes of appeal, and we review under the "plan error" standard). Dote has failed to present us with any cause or reason to reject the Sentencing Guidelines' presumption against concurrent sentences. Nor have we, from a review of the record, ascertained anything extraordinary that brings Dote's case outside the heartland of the Guidelines. Accordingly, the district court's failure to order a downward departure based on Dote's alleged missed opportunity for a concurrent sentence under § 3584(a) did not rise to the level of plain error.

assistant U.S. attorney who failed to act upon the information in the tape recordings in a timely manner. *Id.* at 334. According to the sentencing court, there was "no evidence in the record to support the argument that the delay was intentional [on the part of the government]." *Id.* Nonetheless, the district court found that the defendant had suffered prejudice on account of the delay, primarily because his total sentence would potentially be longer because the "indictment was not returned early enough so that his cases could be tried together." *Id.* at 335. On this basis, the district court dismissed the second indictment.

On appeal, the Ninth Circuit reversed, finding that "the defendant did not sufficiently establish prejudice" to warrant dismissal of the indictment. *Id.* at 335. In reversing the district court's order of dismissal, the Court of Appeals noted that the prejudice to the defendant of the delay in the indictments was speculative, because the sentencing court had latitude to depart downward "if it determined that there was unfair prejudice [in terms of the length of Martinez's sentence] because of the timing of the indictments." *Id.* at 336. Specifically, the court recognized that "because of the random event that the tape recordings of some of his crimes [we]re on the desk of an especially busy AUSA," the various crimes were not "grouped" when they otherwise would have been. On that basis, the Ninth Circuit noted that a downward departure based on pre-indictment delay would be appropriate under 18 U.S.C. § 2552(b), if "the district judge determines that the groupable nature of the crimes ma[de] the fortuitous extension of the sentence unfair. . . ." *Id.* at 337.

In the case before us, the district court similarly denied Dote's motion to dismiss the indictment, noting that it could downward depart at the sentencing stage, if appropriate. Nonetheless, at sentencing, the court, after

hearing the respective arguments and considering the request, denied Dote's motion for a downward departure, stating that it "ha[d] considered [the motion for downward departure] [and] read all the cases that you presented to me, both sides," but ultimately concluded that it "[did not] have that authority." Sent. Tr. at 7. The sentencing court distinguished Dote's case from *Martinez*, noting that in "Martinez . . . everything [involving the investigation of the subsequently-charged thefts] was complete [at the time of the initial sentencing], and it was just a matter that one assistant U.S. attorney had one piece of it, and somebody had the other pieces, and that somebody else didn't get to it until somewhat later. [Therefore,] instead of having the first piece be [prosecuted as] part of an overall package, it got handled separately, which led to the conclusions of the Court there." Sent Tr. at 7-8. The court continued to emphasize that in Dote's case, and in contrast to *Martinez*, "the [prior case] before Judge Manning [involved] a different operation" from the Dote-Mazza gambling enterprise charged in the Second Indictment. *Id.* at 8. Moreover, the court noted that "[the crimes at issue in the Second Indictment] w[ere] ongoing at the time [of the September 1996 sentencing on the First Indictment], which means that all sorts of other things kick in [by way] of the guidelines." *Id.*[3] For all of

---

[3] Although the sentencing court was not specific as to exactly what it meant when it stated that "all sorts of other things kick in in view of the guidelines" when a defendant commits a crime after being sentenced on another offense, it is likely that the court was referring to U.S.S.G. § 5G1.3(a), which "creates a presumption in favor of a *consecutive* sentence," in cases such as Defendant's, where the defendant committed the instant offense after being sentenced for, or while serving a term of prisonment for, an offense that was "fully taken into account in the determination of the offense level for the instant offense. . . ." *United States v. Schaefer*, 107 F.3d 1280, 1284 (7th Cir. 1997) (discussing

(continued...)

those reasons, the sentencing court concluded that it did not "have the authority to downwardly depart." *Id.* We review a district court's determination that it had no discretion to depart downward *de novo. See United States v. Hirsch*, 280 F.3d 811, 814 (7th Cir. 2002).

As reflected in Sentencing Guideline § 5K2.0, "[u]nder 18 U.S.C. § 3553(b), the sentencing court may [depart downward from] the applicable guidelines [range], if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the [Sentencing Guidelines].'" For such a departure to be permissible under the Guidelines, "certain aspects of the case must be found *unusual enough* for it to fall outside the heartland of cases in the Guidelines." *Koon v. United States*, 518 U.S. 81, 98 (1996) (emphasis added). Recognizing that pre-indictment delay may qualify as a "mitigating circumstance" under § 5K2.0, the Ninth Circuit opined in *Martinez* that where a "random" delay in issuing an indictment resulted in a "harsher sentence" on an offense that would have "ordinarily" been

---

[3] (...continued)

U.S.S.G. § 5G1.3(a)). The Government argued in its brief to the district court that the court should sentence Dote to "the equivalent of a consecutive sentence" in light of § 5G1.3(a). *See* Gov. Br. at 7. Because "we . . . presume the district court read the briefs submitted during the [sentencing] proceedings," *see*, *e.g.*, *Ross Bros. Const. Co. v. Int'l Steel Services, Inc.*, 283 F.3d 867, 872 (7th Cir. 2002)*,* the court must have considered the Government's argument regarding § 5G1.3(a) in its decision to deny the downward departure.

Considering the effort of the Sentencing Commission to discourage criminal activity during incarceration (as reflected in U.S.S.G. § 5G1.3(a)), the fact that Dote committed the crimes set forth in the Second Indictment while he was incarcerated was indeed an aggravating reason not to grant Dote consideration for a concurrent sentence.

grouped with another prior offense (and thus resulted in a "fortuitously" longer total term of incarceration), a court under such circumstances may award a downward departure. *Martinez*, 77 F.3d at 337 (emphasis added).

But as the district court noted at sentencing, Dote's situation is distinguishable from that of Martinez in a number of respects. While Martinez had accomplished *all* of the relevant offenses by the time he was sentenced on the first indictment in October of 1993, Dote, at the time of his first sentencing (September 1996), was *still engaged* in the illegal conduct alleged in the Second Indictment. Moreover, as the Government posited to the district court, the Government had not completed its investigation of the Dote-Mazza Enterprise at the time of the September 1996 sentencing, and "was not in possession of all of the evidence supporting the charges [in the Second Indictment] at the time of [the earlier] sentencing," Gov. Opposing Br. at 3. Thus, in Dote's case, as opposed to being "random" or "fortuitous," the Government's failure to indict Dote on his second set of crime (the Dote-Mazza Enterprise) prior to his sentencing on the first set of crime (the Dote-Damico Enterprise) was explained by the fact that Dote was *still engaging* in the Dote-Mazza gambling ring at the time of the September 1996 sentencing (and indeed thereafter, during the first months of his incarceration).

It is also worthy of note that, unlike in *Martinez*, Dote's crimes (namely, his participation in the Dote-Damico Enterprise from 1978 through 1992, and his participation in the Dote-Mazza Enterprise from July 1994 through August 1997) were independent of each other, insofar as they involved different co-conspirators and took place over distinct time periods. The fact that Dote's two indictments addressed separate and distinct crimes further mitigated any potential "unfairness" that might otherwise have attached to the Government's decision to prosecute the two sets of crimes separately.

We have never imposed an obligation on the Government to disclose at a sentencing hearing an incomplete and continuing investigation of separate and distinct criminal conduct (different co-defendants, different time periods). To the contrary, we have emphasized in prior opinions that we "have no interest in micro-managing law enforcement's criminal investigations and its arrests of suspected [racketeering] conspirators." *United States v. Pearson*, 113 F.3d 758, 762 (7th Cir. 1997). Because the Government had adequate basis for waiting until *after* the September 1996 sentencing to obtain the Second Indictment on the criminal charges relating to the Dote-Mazza Enterprise (which was still ongoing at the time of that sentencing), we can ascertain no basis for concluding that Dote's case is highly "unusual" or that it was somehow "unfair" for Dote to face separate prosecution on the two sets of offenses.

We also note that certainly Dote himself was fully aware of his ongoing violation of federal law at the time of his September 1996 sentencing. We have no reason to believe that he was incapable or in any way prevented from disclosing such activities to the court. In all likelihood, Dote had every opportunity to do so, and would have done so if he had determined that such disclosure was in his best interest. Instead, Dote chose not to disclose his subsequent forays into (and ongoing participation in) the racketeering and bookmaking trade (the Dote-Mazza Enterprise). He took a gamble that those activities would go undetected, and lost.

There being no basis for concluding that Dote's case was outside the "heartland" of the Sentencing Guidelines, we hold that the district court's determination that it had no authority to depart downward under the facts of this case was proper.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*