Argued and submitted February 26, reversed and remanded
for new trial September 15, reconsideration denied November 23,
petition for review allowed December 8, 1982 (294 Or 212)

# STATE OF OREGON,
*Respondent,*

*v.*

# EUGENE STANLEY CARSEY,
*Appellant.*

(29505, CA A22361)

650 P2d 987

Warren John West, Bend, argued the cause for appellant. On the brief was Richard E. Forcum, Bend.

William F. Gary, Solicitor General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction of the offense of possession of a controlled substance. ORS 475.992. The sole issue is whether the trial court erred in denying defendant's motion to suppress marijuana seized during a warrantless search of his bedroom with the consent of his grandmother, in whose home defendant resided. Although the trial court found that defendant, who paid rent, had exclusive use and control over his room and that his grandmother was without "actual" authority to consent to the search, it denied suppression of fruits of the search because of the officers' "reasonable good faith" belief that the grandmother had authority to consent to the search. We reverse.

On April 3, 1981, Officer Burleigh of the Bend Police Department contacted defendant's parole officer, Mr. Mulvihill, and informed him that he had reason to believe that defendant had received stolen stereo equipment. Defendant, age 19, was in the legal custody of Children's Services Division (CSD), having been recently released from McLaren School for Boys pursuant to ORS 420.045(1).[1] Under the terms of a Community Release Agreement,[2] however, CSD transferred custody of defendant to his grandparents on the conditions that he reside

---

[1] ORS 420.045(1) provides:

"(1) Upon finding that a student of a juvenile training school is ready for release therefrom and that he had best be returned to his parent or guardian or to a suitable and desirable home or facility, the Assistant Director for Children's Services or his authorized representative, may, after advising the committing court, release the student on parole conditioned upon good behavior."

[2] At the hearing on the motion to suppress, the state introduced only a blank Community Release Agreement which provided, in relevant part:

"Condition of Community Placement:

"1. Place of residence will be with the persons having your custody, unless otherwise specified in this agreement.

"2. Remain within the control and care of the persons having your custody.

"3. Do not change residence or be absent from your residence overnight or longer unless prior approval is gained through your parole officer.

"4. Obey all Federal and State laws and all County or City Ordinances.

"5. Obtain prior approval from your parole officer before leaving the State of Oregon for any reason.

with them and remain within their care and control, and that he maintain full employment.

After receiving Burleigh's information, Mulvihill stated that he did not believe defendant would consent to a search of his bedroom. Burleigh and Mulvihill then gave that information to the district attorney's office, but were told that it was probably insufficient to support a search warrant. Failing in that effort, Mulvihill telephoned defendant's grandmother, Mrs. Carsey, and asked if he and a police officer could come to her house to speak to her about defendant. She agreed; Mulvihill and Burleigh arrived at her home a short time later. Once inside, Burleigh told Mrs. Carsey he had reason to believe defendant possessed stolen stereo equipment in his room, and asked to see defendant's room. Mrs. Carsey agreed and showed it to Mulvihill and Burleigh. The two men entered the room and, after searching it, found the stolen stereo equipment and also marijuana, which they seized.

Defendant was indicted on one count of theft in the first degree, ORS 164.055, and one count of possession of a controlled substance. ORS 475.992. He moved to suppress the evidence seized as a result of the warrantless search on the ground that his grandmother was not authorized to consent to the search. At the conclusion of the hearing, the court entered the following findings of fact:

"Number one. At the time of the search the Defendant was a 19-year-old ward of the Deschutes County Juvenile Court, who was on parole from MacLaren School for Boys.

"Two. He resided with his grandparents, who had been given 'physical custody' by Children's Services Division, according to Exhibit 1 [Community Release Agreement].

"Three. The Defendant occupies a bedroom in his grandparents' home for which he paid $60 per month as

"6. You and the persons having your custody must keep the parole officer advised of your (their) residence address at all times."

"7. Abide by the special conditions as specified below:"

The testimony indicated that defendant and his grandparents had signed an identical form; however, Mr. Mulvihill testified that under Item No. 7 in defendant's agreement two conditions were added: that he maintain full employment and refrain from using drugs and alcohol.

rent. He did his own cleaning and washing. His grandfather never went into his room. His grandmother never went into his room except to stick her head in and tell him that a meal was ready. She characterized the arrangement as an unspoken agreement that his room was under his exclusive control.

"I find, as a matter of law, that the Defendant had exclusive control over his room.

"Four. Consent to search the Defendant's room was obtained from his grandmother who gave it knowingly and voluntarily to a police officer and Defendant's parole officer.

"Five. The officers had insufficient evidence to obtain a search warrant and believed that the Defendant would not give consent. They had a good, safe [sic] belief that all that was needed was the grandmother's consent because she had control over the house and Defendant was in her custody, according to Exhibit 1 [Community Release Agreement].

"Six. The officers first discovered a tape deck which they mistakenly believed to be an amplifier. In seach for the tape deck a metal box was opened which contained cash and marijuana. The box was opened before the last piece of a stolen stereo was found."

On those facts, the court concluded that defendant had a reasonable, subjective expectation of privacy in his bedroom, that the Community Release Agreement was a "nullity" and had no legal effect on defendant's control of his bedroom and that, therefore, defendant's grandmother was not authorized to consent to the search. The court, however, concluded that no purpose would be served by suppressing the evidence because the officers reasonably and in good faith believed the grandmother had authority to consent. It denied defendant's motion to suppress.[3] He was then tried before the court on stipulated facts and convicted.

■     The fundamental rule that warrantless searches are *"per se* unreasonable" is subject to only a "few specifically established and well-delineated exceptions," *Katz v.*

---

[3] The court allowed that portion of defendant's motion to suppress marijuana seeds found in a box in defendant's room, concluding that the testimony did not establish that the box was searched because the officer believed stereo equipment to be inside.

*United States,* 389 US 347, 357, 88 S Ct 507, 514, 19 L Ed 2d 576 (1967), one of those being a search pursuant to voluntary consent. The burden of proving the validity of the search is on the state when the defendant has moved to suppress evidence seized without a warrant. ORS 133.643(4). A consent to search given by a person other than the subject of the search is valid only when the third party had authority to give it. *United States v. Matlock,* 415 US 164, 94 S Ct 988, 39 L Ed 2d 242 (1974); *Stoner v. California,* 376 US 483, 84 S Ct 889, 11 L Ed 2d 856 (1964).

■ To uphold a search based on third party consent, it must be shown that the third party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected," *United States v. Matlock, supra,* 415 US at 171, in such a manner that the nonconsenting party must have either assumed the risk that the third party would consent to the search or that he retained no reasonable expectation of privacy in the premises or property searched. *State v. Williams,* 48 Or App 293, 297, 616 P2d 1178 (1980).

■ Here the trial court concluded that defendant had exclusive control over his bedroom, his grandmother did not have common authority over it and the Community Release Agreement purporting to affect his grandmother's control over him was void because defendant was over the age of 18 at the time the search occurred. The state contends, however, that, notwithstanding defendant's age, he remained a ward of the court under the provisions of ORS 419.531. That statute provides, *inter alia,* that wardship over a child found to be within the jurisdiction of the juvenile court continues until terminated by the court or the ward reaches the age of 21. Because the court had not terminated defendant's wardship and he had not reached the age of 21 at the time of the search, the state argues that defendant remained subject to the control of CSD (who received legal custody of defendant after he was found within the jurisdiction of the juvenile court, *see* ORS 419.507) and "enjoyed only such liberty and such privileges as CSD chose to confer." Under the terms of the release agreement, CSD delegated complete control of defendant to his grandparents, and the grandparents stood in the same relationship to defendant and exercised the same authority

and responsibility as parents to their minor child. Such parental authority, the state argues, includes the right of a parent to consent to the search of a minor child's room.

Assuming, *arguendo,* that the release agreement was valid and had the effect the state urges, it does not necessarily follow that defendant's grandmother, acting *in loco parentis,* had authority to consent to the search of his room. Generally, cases upholding a parent's authority to consent to the search of the minor child's room involve considerations not present here, such as the consenting parent having equal access to the room for cleaning or storing purposes, or the child sharing the room with another sibling or the child not paying room and board. *See United States v. DiPrima,* 472 F2d 550 (1st Cir 1973); *United States v. Mix,* 446 F2d 615 (5th Cir 1971); *State v. Moreno,* 27 Ariz App 460, 556 P2d 14 (1976). Here, however, defendant lived alone in his room, did his own cleaning and laundering and paid $60 a month for room and board, and his grandmother had an understanding with him that his room was under his exclusive control. The trial court's findings to that effect are supported by the record, and we are bound by them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). There is no reason why parents, or those acting *in loco parentis,* may not diminish their right to supervise or control their ward in that manner and, having done so, are without authority to consent to a warrantless search of their ward's private room.

The state contends, nevertheless, and the trial court agreed,[4] that the officers had a reasonable, good faith

---

[4] The trial court cited *United States v. Peterson, supra,* for the proposition that when the police have a "good faith objective reasonable belief" that the consenting party had authority, the evidence will not be suppressed. *Peterson,* however, was a different case. There the search of a son's room was upheld where police were informed by another child that only the mother had authority to consent to the search of her house and the mother, upon her arrival at the house, did so consent after being fully informed of her right to withhold consent.

Furthermore, at the suppression hearing, Peterson did not contend that his mother was without authority to consent to the search of his room, but confined his arguments to the alleged voluntariness of her consent. The mother testified that her son shared his room with two brothers. The trial court, on its own motion, concluded that the defendant's mother was without authority to consent to the search. On the defendant's appeal from his conviction, the Fourth Circuit Court of Appeals stated that if the issue had been presented to it originally, it

belief that the grandmother's consent to the search of defendant's room was valid and, therefore, no purpose would be served by applying the exclusionary rule in this case. Some courts have adopted that "apparent authority doctrine," *United States v. Peterson,* 524 F2d 167 (4th Cir 1975); *United States v. Sells,* 496 F2d 912 (7th Cir 1975); *People v. Superior Court (Williams),* 77 Cal App 3d 69, 143 Cal Rptr 382 (1978), but no Oregon appellate court has either accepted or rejected it; neither has the United States Supreme Court, although that court discussed it in *Stoner v. California, supra.*

As the state acknowledges, however, the doctrine applies only to a mistake of fact, not of law. Thus, in *Stoner v. California, supra,* where the consent of a night clerk to the search of defendant's hotel room was held invalid, the Supreme Court found no substance to the claim that the search was reasonable because the police relied on the night clerk's consent and had a reasonable basis for believing the clerk was authorized to consent. The police were not mistaken as to the facts before them: the consenting individual was a night clerk, and the defendant a renter of a room. They were, however, mistaken as to the law, which did not "permit an otherwise unlawful police search of a hotel room to rest upon consent of the hotel proprietor." *Stoner v. California, supra,* 376 US at 489.

Here, too, the officers were not mistaken as to the facts relied on: defendant was a ward of the juvenile court and resided in the home of his grandmother pursuant to the Community Release Agreement, but they were mistaken as to the legal effect of that agreement, which did not, on its face, or by necessary implication, authorize defendant's grandmother to consent to the search of his room. The grandparents had custody and control of defendant, but

---

would have concluded that the search of the defendant's bedroom was valid under the actual authority of his mother, finding it particularly important that the defendant shared the room with his two brothers. The court went on to conclude, however, that the mother had the "appearance" of authority because

"* * * upon her arrival, Mrs. Peterson assumed the absolute authority to speak on the right to search. She made no reference to her three sons or even indicated that any room was 'set aside exclusively' for their use. At the time of the search, she had access to and complete control of the entire premises, including the bedroom used by the children. * * *" 524 F2d at 180.

how that control was exercised was up to them. Neither the agreement nor any aspect of defendant's wardship required that he consent to a search of his room or that his grandparents be authorized to give their consent.

Accordingly, even if the "apparent authority doctrine" were adopted, it would be inapplicable here. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.