# STATE OF OREGON,
*Respondent,*

*v.*

# SCOTT EUGENE WATERHOUSE,
*Appellant.*

## (C 81-08-34066; CA A23863)

659 P2d 1013

Phillip M. Margolin, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction for theft of a boat. ORS 164.135. He contends that certain evidence should have been suppressed, that he was denied due process by preindictment delay, and that the evidence was insufficient to support the conviction. We affirm.

The facts relative to the search are not controverted. Defendant was incarcerated awaiting a hearing on an alleged parole violation. He asked his girlfriend to hold some of his possessions, including a boat, while he was in jail. She took the boat to the home of her mother, Ann Mustered. Defendant's parole officer, who had previously seen the boat in his garage during a consent search, learned that the boat might be stolen and that it was at Mustered's residence. After going to that residence and observing the boat in the yard, the parole officer returned with police officers who told Mustered that they suspected that the boat was stolen, and she gave them permission to look at it, indicating that she did not want it on her property if it was stolen. One officer noted that the identification number on the hull of the boat was pasted on. Because he believed that identification numbers are permanently engraved on the boat hull, the officer suspected that the pasted-on number concealed the permanent number. As Mustered watched without objection, the officer pulled off the pasted-on number, disclosing the permanent number underneath. A check of that number revealed the boat to be stolen.

Defendant's first assignment of error is that the officer committed an illegal seizure in peeling off the number and an illegal search in looking at the permanent number, and that Mustered did not have authority to consent to these intrusions. Defendant concedes that Mustered had authority to consent to the police examination of the boat; however, he contends that Mustered did not have the authority to give permission to the police to seize the pasted-on number or to look underneath at the permanent number.

A warrantless search may be valid if there has been consent and a third party may provide that consent if that person has the authority to do so. *United States v. Matlock,* 415 US 164, 94 S Ct 988, 39 L Ed 2d 242 (1974). As

stated in *State v. Carsey,* 59 Or App 225, 230, 650 P2d 987 (1982):

"To uphold a search based on third party consent, it must be shown that the third party 'possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected,' *United States v. Matlock, supra,* 415 US at 171, in such a manner that the nonconsenting party must have either assumed the risk that the third party would consent to the search or that he retained no reasonable expectation of privacy in the premises or property searched. *State v. Williams,* 48 Or App 293, 297, 616 P2d 1178 (1980)."

We conclude that defendant did not have a reasonable expectation of privacy in the identification number.

■ Where the third party is a bailee, an important factor is the extent to which the person asserting the privacy interest took cognizable steps to protect it. *See, e.g., United States v. Walker,* 575 F2d 209 (9th Cir), *cert den* 439 US 931 (1978).[1] Here, defendant gave neither his girlfriend nor Mustered any particular instructions not to show the boat to anybody.

■ Defendant's reasonable expectation of privacy in the legal number is also affected by the fact that boat identification numbers are treated similarly to those of an automobile. *See generally United States v. Powers,* 439 F2d 373 (4th Cir), *cert den* 402 US 1011 (1971); *Cotton v. United States,* 371 F2d 385 (9th Cir 1967). As the court stated in *United States v. Polk,* 433 F2d 644, 647 (5th Cir 1970):

"Vehicle identification numbers are put on automobiles by the manufacturers to aid in identifying the vehicles. There are so many similar cars that individual vehicles can be identified only through the use of such individual numbering. State laws contain many requirements for disclosing and recording such VIN's, showing a generally accepted mode of disclosure and the lack of any reasonable expectation of privacy with respect to the numbers.

"Most states require that automobiles be registered with a state agency to establish a record of car ownership. The registration, which must be carried in the car,

---

[1] In *Walker,* the defendant's co-owner gave an envelope containing photographs to a third person to deliver to the defendant without any instructions about the manner of disposition or delivery. The court found the defendant had assumed the risk that the third party would consent to a search.

identifies the car by its VIN. These requirements proceed from a purpose to keep track of the ownership of potential instruments of personal and property injury, so that drivers in automobile accidents can be traced and so that compulsory insurance requirements can be enforced. Additionally, the state seeks to protect ownership rights in these mobile and expensive assets. * * *

"VIN's are typically disclosed to private parties also. Automobile purchase and sale documents usually identify the car by its VIN. Automobile insurance policies also identify cars by their VIN's. There can therefore be no reasonable expectation of privacy with respect to the identity of the VIN. Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the VIN within the scope of the Fourth Amendment." 433 F2d at 647.

Although a boat is not an automobile, many of the same considerations apply to boat identification numbers.[2] Pursuant to Oregon statutes, it is a punishable offense to possess a boat on which the identification number has been covered or altered.[3] Other statutes relating to boat identification numbers indicate that Oregon recognizes a diminished expectation of privacy in them.[4]

---

[2] This is not to say that there is a diminished expectation of privacy in identification numbers on other forms of property.

[3] ORS 488.778 provides:

"No person shall operate a boat on the waters of this state for which the board has issued a certificate of boat title unless such boat has a hull identification number. Hull identification numbers must be carved, burned, stamped, embossed, clearly imprinted or otherwise permanently affixed to the outboard side of the transom, or if there is no transom, to the outermost starboard side at the end of the hull that bears the rudder or other steering mechanism above the waterline of the boat in such a way that alteration, removal or replacement would be obvious or evident. No person, firm, association or corporation shall destroy, remove, alter, cover or deface the manufacturer's identification number."

[4]

"When a police officer discovers a boat or component from which the identification number assigned to the boat or component has been removed, defaced, covered, altered or destroyed he may seize and hold it for identification and disposal as provided in ORS 488.905 to 488.920." ORS 488.905(1).

"Any person who knowingly buys, receives, disposes of, sells, offers for sale or possesses any boat or component from which the identification number assigned to the boat or component has been removed, defaced, covered, altered or destroyed for the purpose of concealing or misrepresenting the identity of the boat or component commits a Class A boating infraction." ORS 488.993.

It is true that the officer made a physical intrusion in order to find the permanent number. However, covering it by an obviously false number did not significantly increase the reasonableness of defendant's expectation that it would remain hidden. Although defendant may have thought the number was hidden, it was apparent to the police officer that it was underneath the pasted-on number.

■ Defendant's second assignment of error is that the court should have granted his motion to dismiss because he was denied due process by a preindictment delay. In December, 1980, he was arrested as a parole violator. After a hearing, his parole was revoked, in part on the basis of evidence of the boat theft, and he was returned to prison for two months. He was again released on parole August 15, 1981, and the indictment in this case was returned on August 21, 1981. The investigation reports regarding the theft had been submitted to the district attorney in February, 1981.

■ Interpreting *United States v. Lovasco*, 431 US 783, 97 S Ct 2044, 52 L Ed 2d 752 (1977), and *United States v. Marion*, 404 US 307, 92 S Ct 455, 30 L Ed 2d 468 (1971), we have stated that to show a violation of due process a defendant must show that

> "* * *(1) a preindictment delay caused substantial prejudice to defendant's right to a fair trial; and (2) the delay was taken to gain a tactical advantage over the accused. * * *" *State v. Moroney*, 44 Or App 513, 515, 606 P2d 212, *reversed on other grounds*, 289 Or 597, 616 P2d 471 (1980).

Defendant urges that he was prejudiced because he was deprived of the opportunity to receive concurrent sentences when the state waited until he was released from parole to seek the indictment. He alleges no other prejudice.[5] The trial court found that the delay was inadvertent, and that finding is supported by the record. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). Defendant has failed to demonstrate that the delay violated his due process rights.

---

[5] Defendant also claims that he lost work and suffered mental strain as a result of the timing of the prosecution. The prejudice with which we are concerned in cases involving preindictment delay, however, is prejudice to defendant's right to a fair trial. *State v. Moroney, supra.*

■      Defendant's third assignment is that there was insufficient evidence to support the conviction and that his motion for judgment of acquittal should have been granted. Following denial of his pretrial motion, defendant consented to a trial to the court on stipulated facts. He contends that the facts do not prove the requisite mental element of the offense. He acknowledges that the stipulated evidence establishes that he knew the owner of the boat and probably had seen the boat before it was stolen, that the boat was seen in his garage, and that it had been repainted and a false serial number pasted over the real one. The evidence also showed that a title application for a homemade boat was filed in defendant's name using the false identification number and listing defendant as the builder. The boat was not homemade by defendant. On those facts the court was entitled to determine guilt. *See State v. Pickens,* 6 Or App 133, 487 P2d 95 (1971).

Affirmed.