STATE of Minnesota, Respondent,

v.

**Cheyenne Douglas LUSSIER,
Appellant.**

No. A04–1316.

Court of Appeals of Minnesota.

May 10, 2005.

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Timothy R. Faver, Beltrami County Attorney, Bemidji, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; WRIGHT, Judge; and HUSPENI, Judge.*

## OPINION

WRIGHT, Judge.

Appellant asserts that his right to due process was violated because the state intentionally delayed charging him with first-degree burglary in order to obtain a substantially increased criminal history score and sentence. We affirm.

## FACTS

On March 15, 2003, hours after police received a report of a home burglary, appellant Cheyenne Lussier was arrested. On March 18, 2003, in connection with this incident, the state charged Lussier with

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to    Minn. Const. art. VI, § 10.

one count of second-degree burglary, in violation of Minn.Stat. § 609.582, subd. 2 (2002); one count of third-degree burglary, in violation of Minn.Stat. § 609.582, subd. 4 (2002); and three counts of attempted theft of a motor vehicle, in violation of Minn.Stat. § 609.52, subds. 2(17), 3(3)(d)(v) (2002). Lussier subsequently pleaded guilty to these charges, and on May 5, 2003, Lussier was sentenced to 33 months' imprisonment.

On March 21, 2003, while Lussier was in custody for the March 15 burglary, he admitted his involvement in a home burglary committed on November 27, 2002. On May 7, 2003, the state charged Lussier with one count of first-degree burglary with a dangerous weapon, in violation of Minn.Stat. § 609.582, subd. 1(b) (2002), for the November 27 offense. Lussier moved to dismiss this charge, alleging prosecutorial misconduct and violation of his right to due process. According to Lussier, the state had probable cause to charge him with the November 27 burglary before it was charged on May 7, but the state delayed prosecution of the November 27 burglary offense so that the convictions of the March 15 offenses would increase the severity of his criminal history score for the November 27 burglary.

In support of this assertion, Lussier relied on a statement by the prosecutor at the guilty plea hearing on the March 15 offenses. Regarding the sentences on the five counts, as well as the sentence executed upon the revocation of probation on another offense, the prosecutor explained to the district court, "I looked for a way to make them consecutive, but I couldn't find it. So that is my understanding, that under the Guidelines, they would be concurrent sentences, Your Honor." Lussier

argued that, because the state's prior attempt at securing consecutive sentences had been frustrated, the state improperly delayed prosecution of the November 27 offense to increase the severity of the sentence. The convictions arising from the March 15 incident increased Lussier's criminal history score from three to six and increased his presumptive guideline sentence from 78 to 108 months.

The state denied the allegations of bad faith or improper motive. In its order dated August 4, 2003, the district court denied Lussier's motion to dismiss.

Lussier pleaded guilty to first-degree burglary with a dangerous weapon on December 3, 2003. Relying on its argument that the state had delayed prosecution to obtain a more severe sentence, Lussier moved for a downward durational departure. He sought a sentence of 78 months, based on a criminal history score that did not reflect the convictions of the March 15 offenses. The district court denied the departure motion and sentenced Lussier to 108 months' imprisonment. This appeal followed.

## ISSUE

Did the defendant establish that a precharge delay resulted in a violation of the right to due process?

## ANALYSIS

■ Lussier argues that his sentence was imposed in violation of his right to due process because the state intentionally delayed charging him with the November 27 offense in order to obtain a substantially increased criminal history score, resulting in a longer sentence.[1] Whether a sentence

---

1. The state raises two procedural objections to this appeal. The state first asserts that, because Lussier did not demand recalculation

of his criminal history score before the district court, he cannot seek this relief on appeal. Although Lussier did not seek recalcu-

violates the right to due process is a question of law, which we review de novo. *See State v. Gutierrez*, 667 N.W.2d 426, 438 (Minn.2003) (reviewing de novo challenge to sentence under cruel-or-unusual-punishment prohibition of Minnesota Constitution).

In *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the United States Supreme Court considered the effect of a decision by the state to delay charging an offense. The *Marion* court held that, in accordance with constitutional guarantees of due process, dismissal is required if "it were shown at trial that the pre-indictment delay ... caused substantial prejudice to [the defendants'] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Id.* at 324, 92 S.Ct. at 465. The Court did not define which circumstances constitute prejudicial delay, but it observed:

> Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case.

*Id.* at 324–25, 92 S.Ct. at 465–66.

Here, a threshold consideration is whether prejudice can be based on a pre-charge delay that affects sentencing. Such a broad definition of prejudice cannot be derived from *Marion*, which refers only to delay that "caused substantial prejudice to [the defendants'] rights to a fair trial." We adopted this definition of prejudice in *State v. Klindt*, observing that prejudice must be related to the ability to mount an effective defense at trial. 400 N.W.2d 127, 129 (Minn.App.1987). Thus, when a defendant pleads guilty, that defendant waives the right to challenge a pre-charge delay. *Id.* Because Lussier pleaded guilty, we conclude that he did not suffer prejudice *at trial* and, therefore, cannot proceed with a due process challenge to his sentence under a theory of pre-charge delay.

We note that our decision in *Klindt* is contrary to the majority rule in other jurisdictions that have considered the issue.[2]

---

lation, he sought equivalent relief in the form of a downward durational departure. Both parties litigated the due process issue, and the district court ultimately decided against Lussier. Because Lussier's claim of prejudicial pre-charge delay was litigated before and decided by the district court, it is properly preserved for appeal. *State v. Foreman*, 680 N.W.2d 536, 539 (Minn.2004).

The state also contends that Lussier's appeal was untimely. Although Lussier's notice of appeal was filed 92 days after his sentencing, it was properly filed with an affidavit of service by mail, which establishes that the notice of appeal was mailed before the 90–day deadline. Thus, Lussier's appeal is timely. Minn. R. Civ.App. P. 125.03 (providing that service by mail is complete on mailing); *State v. Kortkamp*, 633 N.W.2d 863, 866 (Minn.App. 2001).

2. Most jurisdictions, however, have not squarely addressed whether prejudice can be based on delay that affects the severity of a sentence. Some jurisdictions have considered instead whether prejudice can be based on a delay that prevents a sentence to be served concurrently with a prior conviction. Most have held that such delay, by itself, is insufficient to support a claim of actual prejudice. *See, e.g., United States v. Stokes*, 124 F.3d 39, 44 (1st Cir.1997); *United States v. Sherlock*, 962 F.2d 1349, 1354 (9th Cir.1989); *State v. Higa*, 102 Hawai'i 183, 74 P.3d 6, 10 (2003); *Jones v. State*, 96 Nev. 240, 607 P.2d 116, 117 (1980). Without expressly deciding the prejudice element, other jurisdictions have decided that, without an improper state motive, a lost opportunity for a concurrent sentence does not violate the right to due process. *See, e.g., Commonwealth v. Imbruglia*, 377 Mass. 682, 387 N.E.2d 559, 564–65

When a pre-charge delay affects only sentencing, some jurisdictions characterize the potential prejudice as "speculative." *United States v. Brockman,* 183 F.3d 891, 897 (8th Cir.1999); *United States v. Martinez,* 77 F.3d 332, 336–37 (9th Cir.1996). But these jurisdictions nevertheless have found sufficient prejudice to inquire further into whether the delay was the result of an improper state motive. *Brockman,* 183 F.3d at 896; *Martinez,* 77 F.3d at 336; *State v. Trompeter,* 555 N.W.2d 468, 471 (Iowa 1996); *Randall v. State,* 806 So.2d 185, 215–16 (Miss.2001). Given that approximately 97 percent of criminal proceedings in Minnesota are resolved without trial, Minnesota Court Services, 2004 Research & Evaluation Data, we query whether due process protection should not also extend to a pre-charge delay that affects sentencing when conviction is pursuant to a guilty plea.

■ If a due process challenge to a sentence imposed following a guilty plea were permitted to proceed on the basis of a pre-charge delay, we would then consider whether Lussier could establish a violation of due process. Although authorities have not adopted a uniform standard as to the defendant's burden for this claim, most require the defendant to prove both substantial prejudice and improper state motive. *United States v. Crouch,* 84 F.3d 1497, 1523 (5th Cir.1996); *United States v. McCoy,* 977 F.2d 706, 711 (1st Cir.1992); 3 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 18.5(b) (2d ed.1999). And this is the standard that the Minnesota Supreme Court has adopted. *State v. Hanson,* 285 N.W.2d 487, 489 (Minn.1979) (requiring de-

fendant to establish proof of both substantial prejudice and improper state motive); *State v. F.C.R.,* 276 N.W.2d 636, 639 (Minn.1979) (same).

Several principles limit the scope of substantial prejudice based on a prosecutor's exercise of discretion as to when and whether to proceed with criminal charges. *United States v. Lovasco,* 431 U.S. 783, 791, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). A mere averment of delay will not establish prejudice. *McCoy,* 977 F.2d at 711; *United States v. Sherlock,* 962 F.2d 1349, 1354 (9th Cir.1989). Moreover, prejudice cannot be inferred from a pre-charge delay to conduct additional investigation or from a failure to proceed with charges immediately after probable cause is established. *Lovasco,* 431 U.S. at 791–94, 97 S.Ct. at 2049–51. Although the Minnesota Supreme Court has not addressed this issue directly, it accords substantial deference to the state's decision regarding when to initiate criminal charges. *F.C.R.,* 276 N.W.2d at 638.

Some courts have suggested that, when a delay results in a disproportionate criminal history, there is sufficient prejudice to require a downward durational departure. *Brockman,* 183 F.3d at 897; *Martinez,* 77 F.3d at 336–37. When a due process claim proceeds on this basis, prejudice may be assumed in order to reach the issue of improper state motive. *Martinez,* 77 F.3d at 336. Because Lussier received a more severe sentence, apparently due to a delay in charging, for the purpose of our analysis, we also shall assume substantial prejudice in order to address whether there is proof of an improper state motive.

(1979). The Minnesota Supreme Court reached this same conclusion in *State v. F.C.R.,* 276 N.W.2d 636 (Minn.1979). Without considering whether the denial of a concurrent sentence caused prejudice, the *F.C.R.*

court held that, in the absence of an improper state motive, a lost opportunity for a concurrent sentence does not violate the right to due process. *Id.* at 639.

Our research has produced only two cases that have considered whether a pre-charge delay, resulting in a more severe criminal history, is attributable to an improper state motive.[3] In *Brockman*, the Eighth Circuit noted that any increased criminal history is the product of the defendant's actions and cannot be attributed to the state. 183 F.3d at 896. In *Randall v. State*, when an intervening offense caused a defendant to be eligible for the death penalty but the defendant failed to offer any proof of improper state motive, the Mississippi Supreme Court held that an improper motive may not be inferred. 806 So.2d at 215–16.

■ Lussier claims that, because the state was unable to obtain consecutive sentencing for the March 15 offenses, the state delayed prosecution of the November 27 offense in order to obtain a more severe penalty. This assertion is based solely on the prosecutor's statement at the guilty plea hearing for the March 15 offense, when he noted that he was unable to obtain consecutive sentences.

It is the prerogative of the state to request a sentence from the district court, *State v. Krotzer*, 548 N.W.2d 252, 253–54 (Minn.1996), and an improper motive cannot be established by an accurate statement of the law, *In re Lord*, 255 Minn. 370, 381, 97 N.W.2d 287, 294 (1959). Here, during a discussion with the district court regarding sentencing options, the prosecutor accurately stated that consecutive sentencing was not available for the March 15 offenses. *See* Minn. Sent. Guidelines II.F

(concurrent sentencing presumption except in limited circumstances). Aside from a single accurate statement of the law, Lussier relies entirely on the fact of delay to establish an improper state motive. But we cannot infer an improper state motive from such delay alone, even when it results in a more severe criminal history score and a longer sentence. *See Brockman*, 183 F.3d at 896; *Sherlock*, 962 F.2d at 1354. Lussier has not established an improper state motive, which provides a second basis to reject his claimed denial of due process.

### DECISION

Because Lussier entered a guilty plea, Lussier is unable to establish that a pre-charge delay substantially prejudiced his rights at trial. He, therefore, waived the right to assert that such delay violated his right to due process.

**Affirmed.**

---

3. Some courts have held that an improper state motive may not be inferred from the fact that charging is delayed until completion of a separate proceeding. *Stokes*, 124 F.3d at 45 (finding that prosecutor admitted federal prosecution was contingent on outcome of state prosecution); *see also State v. Waterhouse*, 62 Or.App. 12, 659 P.2d 1013, 1016 (1983) (holding that prosecution after dis-

charge from parole was not prejudicial). The Minnesota Supreme Court reached a similar conclusion in *F.C.R.*, noting in dictum that "[t]he mere fact that a prosecutor waits to see how long a defendant serves on a prior offense before charging him with another crime does not deny the defendant due process." 276 N.W.2d at 639.