ATTORNEY FOR APPELLANT
Benjamen W. Murphy
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General

Cynthia L. Ploughe
Joby Jerrells
Deputy Attorney Generals
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 45S05-0510-CR-454

DAVID JEFFREY LEE

*Appellant (Defendant below),*

v.

STATE OF INDIANA

*Appellee (Plaintiff below).*

Appeal from the Lake Superior Court, No. 45G01-0306-FD-00113
The Honorable Salvador Vasquez, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 45A05-0405-CR-267

**June 29, 2006**

**Boehm, Justice.**

### Facts and Procedural History

In the spring of 2003, David Lee and his fiancée, Melissa Koczur, lived in a house in Highland, Indiana, owned by David's mother, Margaret Lee. David operated a photography studio in the basement of their home. On May 10, 2003, Melissa went to the basement to get some fertilizer and noticed five videocassette recorders in an open Gateway shipping box. Several unlabeled VHS tapes were in or near the box. Melissa viewed two or three of the tapes on a tele-

television next to the box and found that they all showed the same woman changing clothing from different camera angles. She then realized the tapes had been recorded in the photography studio's changing room and on investigation found two hidden cameras in the room.

Melissa took sixteen tapes, including those she had viewed, to the Highland police station. She told Sergeant Michael O'Donnell and Detective Tim Towasnicki that she and David lived in the house, that David operated a photography studio from the home, and that she had found videotapes in the basement of the home that David had secretly recorded of women undressing in his studio's changing room. O'Donnell and Towasnicki viewed several tapes randomly selected from the sixteen. They ran a check of David's driver's license which revealed an outstanding arrest warrant in another county.

Melissa agreed to accompany Towasnicki, O'Donnell, and two other officers to the residence where David was arrested on the outstanding warrant. After David was taken to the police station, Melissa executed a written consent to a warrantless search of the residence for "video equipment and electronic devices/computer disks located at basement studio and surrounding area(s) to include main floor area(s)."[1] Melissa then took O'Donnell and Towasnicki to the basement and showed them the Gateway box, the VCRs, the television, and the two hidden cameras she found in the changing room. At that point, she told them that David's mother owned the house. The officers immediately stopped the search, contacted Margaret, and waited for Margaret to arrive. The search was resumed after they secured Margaret's consent.

After three additional hidden cameras were found in the changing room, the officers seized all five cameras, as well as the five recorders, and 369 VHS tapes found in three ground floor bedrooms. These included both unlabeled tapes and commercially produced tapes labeled with titles such as "Girls Gone Wild." While the officers conducted their search, Melissa burned

---

[1] After this case was briefed, the United States Supreme Court ruled in <u>Georgia v. Randolph</u>, 2006 U.S. LEXIS 2498, *** 33-34 (Mar. 22, 2006) that one co-occupant may not give effective consent to search shared premises when another is present at the threshold and refuses consent. The Court emphasized the narrowness of its holding: "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy [with a co-tenant], loses out." <u>Randolph</u> does not affect this case because David was absent when Melissa consented.

2

CD copies of files from David's computer consisting of still photographs of his clients. These were also given to the officers.

David was charged with thirty-six counts of Class D felony voyeurism. The trial court denied his motion to suppress the sixteen videotapes Melissa brought to the police station and the 369 tapes the officers subsequently retrieved from the home. On interlocutory appeal, the Court of Appeals affirmed as to the tapes brought to the station and reversed as to the tapes taken from the home. Lee v. State, 826 N.E.2d 131, 136 (Ind. Ct. App. 2005). We granted transfer. Lee v. State, 841 N.E.2d 186 (Ind. 2005).

## I. Fourth Amendment Challenge

David concedes that the police could lawfully seize the sixteen tapes Melissa brought to the police station. He nonetheless argues that the Federal Constitution required police to secure a search warrant before viewing tapes other than the two or three tapes Melissa had previously watched. David raises a separate challenge to the seizure and viewing of the 369 tapes the police found in their search of the residence.

### A. *Viewing of Tapes Supplied by Melissa*

David claims that he had a protected privacy interest in the content of the sixteen tapes that Melissa delivered to the police, that the screening of the tapes constituted a government search, and that none of the exceptions to the warrant requirement are applicable. David cites the Supreme Court's decisions in Walter v. United States, 447 U.S. 649 (1980) and United States v. Jacobsen, 466 U.S. 109 (1984) which make clear that the Fourth Amendment is violated by a government inspection that exceeds the scope of a prior search by a private individual who discovers evidence.

In Walter, a securely sealed package shipped to a fictitious addressee was mistakenly delivered to another party whose employees opened the package and found individual 8mm film boxes covered with suggestive drawings and explicit descriptions of the films. 477 U.S. at 651-52. An employee opened one or two of the boxes and unsuccessfully attempted to view portions of the film by holding it up to light. Id. at 652. The films were subsequently viewed by FBI agents on a projector, leading to the indictment of a husband and wife on federal obscenity

3

charges.  Id.  A plurality of the Court held that the agents' unauthorized screening of the films was an unlawful search.  Id. at 654, 660.  Justice Stevens, joined by Justice Stewart, held that the private party's actions had only partially frustrated the sender's expectation of privacy, that the FBI's unauthorized screening of the films constituted an additional search that went beyond the scope of the private search, and that the Fourth Amendment had been violated by the warrantless search in the absence of exigent circumstances or prior consent.  Id. at 657-59.

In Jacobsen, a Federal Express employee opened a damaged package and found several plastic bags the innermost containing white powder inside a closed 10-inch tube wrapped in several pieces of crumpled newspaper.  466 U.S. at 111.  A federal drug agent was summoned, but before his arrival the bags had been put back into the tube and the tube and newspapers back into the box.  Apparently, when the agent examined the box, the powder was not visible until he removed the tube from the box.  Id.  After the agent reopened the package, he subjected a small quantity of the white powder to a field test that identified it as cocaine.  Id. at 111-12.  The removal of the plastic bags from the tube and the agent's visual inspection of their contents did not exceed the scope of the earlier private search and enabled the agent to learn nothing that the Federal Express employee had not previously learned.  The Court held that the government therefore infringed no legitimate expectation of privacy, and the inspection did not violate the Fourth Amendment.  Id. at 120.  The Court further held that the chemical test, which merely established that the already revealed white substance was cocaine, did not compromise any legitimate privacy interest.  Id. at 123.

David argues that the Walter-Jacobsen line of authority required the officers to obtain a search warrant before playing the tapes Melissa had not already viewed.  Specifically, he contends that Melissa viewed only two or three videotapes in the basement of the couple's home and therefore the officers' viewing of other tapes at the station exceeded the scope of Melissa's private search.  Warrantless searches based on lawful consent are not unreasonable.  Illinois v. Rodriguez, 497 U.S. 177, 179 (1990); Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  The private parties in Walter and Jacobsen—recipients of misdirected packages and a common carrier—had no authority to consent to the searches undertaken by government officials.  Therefore, the police could go as far, but no further than those private parties had gone.  Walter and Jacobsen cast no doubt upon the proposition that police, without first securing a warrant, may

4

examine materials received from a private party well beyond any examination the private party may have undertaken when the private party has lawfully consented to the examination. See 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.8(b), p. 236 (3d ed. 1995).

Applying this principle here, we conclude that Walter and Jacobsen are unavailing. In those cases police conducted a search of personal property under circumstances where no consent was applicable. In Walter, the sender had a reasonable expectation that the contents of the package would remain hidden from view from all but the intended recipient. The employees of the party who received the misdirected package in error were not the intended recipient, and therefore had no actual or apparent authority over the package. In Jacobsen, the sender likewise had a recognized privacy interest in the package and had entrusted it to a common carrier for the limited purpose of shipping the package to its intended recipient. Although the common carrier had authority over the package for the limited purpose of shipping it, the common carrier did not have access to the contents of the package. Because neither consent nor any other exception to the warrant requirement was applicable, the Court in Walter and Jacobsen determined that police examination of property previously examined by the private parties was limited to the scope of the private examination.

By contrast, in the present case, an exception to the warrant requirement—consent—is applicable. David had a cognizable privacy interest in the tapes because they were his personal effects contained in his home, where expectations of privacy are greatest. However, unlike the third parties in Walter and Jacobsen, Melissa had actual authority over the tapes: she shared the house with David and had full access to all rooms in the house, including the areas where the tapes were kept. It is well established that a third party may consent to a search of another's premises or property if actual authority exists. Rodriguez, 497 U.S. at 179; United States v. Matlock, 415 U.S. 164, 171 (1974). Actual authority does not turn solely on whatever property interest the third party may have in the property. It can arise from "mutual use of the property by persons generally having joint access or control for most purposes." Matlock, 415 U.S. at 171. This is explained on the ground that the consenting party could permit the search "in his own right" and also that the defendant "assumed the risk" that a co-occupant might permit a search. Id. See also 1 LaFave, supra at § 1.8(b), p. 237 ("when one subjects her property to the joint or

5

exclusive control of another, she has thereby assumed the risk that the other person will turn that property over to the police and allow the police to examine it further.").[2]  Accordingly, by living with Melissa and taking no steps to deny Melissa access to the tapes, David assumed the risk that Melissa would take the tapes to the police station.

### B.  *Seizure and Viewing of Tapes Found in the House*

David brings a separate challenge to the seizure and viewing of the 369 tapes found by police in the house.  David concedes that Melissa had actual authority to permit police entry into the house because she lived there and had mutual use and control of the house for most purposes.  He nonetheless argues that Melissa's consent to the search of the house was ineffective to justify the seizure and warrantless viewing of the tapes police found in the home.  As to the seizure, third party consent to search of a residence also justifies warrantless seizure of evidence found therein.  United States v. Falcon, 766 F.2d 1469, 1474-75 (10th Cir. 1985).  Of course, warrantless seizure of evidence from the home based on third party consent is limited by the scope of the consent given by the third party and any limitations on the third party's authority.  In this case, Melissa consented to a search of the home for "video equipment and electronic devices/computer disks located at basement studio and surrounding area(s) to include main floor

---

[2] See, e.g., United States v. Marshall, 348 F.3d 281, 288-89 (1st Cir. 2003) (Defendant was suspected of theft.  Defendant's girlfriend consented to search of two bedrooms the couple rented in a house and officers discovered VHS tapes containing child pornography.  The court held the Walter rule inapplicable because the girlfriend had regular access to the tapes, the tapes were not kept in a separate area where the girlfriend lacked access or control, and therefore, the girlfriend gave lawful consent to viewing of the tapes.); United States v. Jenkins, 46 F.3d 447, 455-56 (5th Cir. 1995) (Walter limitations not applicable where government obtained videotapes from an employee who had lawful possession of his employer's tapes, had the actual authority to open the boxes containing the tapes, and had, at a minimum, apparent authority to view the tapes.  The police could play the tapes without a warrant because of the employee's lawful consent.); Ex parte Hilley, 484 So. 2d 485, 491 (Ala. 1985) (After suspicion developed that the defendant might have poisoned her husband and daughter with arsenic, the husband's sister took to the police some of the defendant's effects that had been left in the sister's basement and at another location under the partial control of the sister.  Police testing revealed arsenic.  The court rejected a Walter challenge to the testing:  "In the present case, [the sister] had the authority to possess and control the items and could rightfully consent to a complete scientific analysis, whereas the third party in Walter never had rightful possession or control of the pornographic films involved in that case and could not properly consent to an expansive search of them."); but see United States v. Runyan, 275 F.3d 449, 464-66 (5th Cir. 2001) (Defendant's estranged wife broke into defendant's ranch in defendant's absence, removed several CDs, zip and floppy disks and viewed some but not all of the files contained on the disks.  Because the wife did not have authority to possess or control the items the Fifth Circuit concluded that Walter applied and that the police had exceeded the scope of the private search when they examined disks that the private searcher did not examine.).

area(s)." The VHS tapes are clearly "video equipment" and are within the scope of the consent given by Melissa. David nonetheless argues that the warrantless seizure and viewing of the tapes was unlawful because Melissa's common authority over the house generally did not extend to the tapes. Specifically, he argues that unlabelled VHS tapes are "closed containers" under his exclusive control, that screening of their contents constitutes a separate search, and that the seizure of the tapes and the additional "search" effected by viewing them required the additional consent of their owner (David) or a third party with authority.

Following Matlock, courts have consistently recognized the principle that persons sharing premises may nonetheless retain areas or objects within their exclusive control that are not subject to search based on consent of one of the co-occupants. See 3 LaFave, supra at § 8.3(f), p. 738; United States v. Block, 590 F.2d 535, 541 (4th Cir. 1978); State v. Harris, 642 A.2d 1242, 1248 (Del. Super. Ct. 1993); State v. Williams, 616 P.2d 1178, 1180 (Or. Ct. App. 1980). David contends that the tapes here fell within this exception to that doctrine. David's argument relies heavily on our decision in Krise v. State, 746 N.E.2d 957 (Ind. 2001). In Krise, a man and woman jointly occupied a house and the man consented to a search of the premises for drugs. Id. at 959-60. Officers found a woman's purse in the bathroom, searched it, and found a leather pouch containing a small wooden case which in turn contained marijuana and methamphetamine. Id. at 960. We concluded that because the man and woman shared the home, the man could consent to search of the common areas of the house, including the bathroom. Id. at 967. However, we held that the man could not consent to the search of the purse because "inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority—actual or apparent—to give consent to the search of the container itself." Id. at 969.

David claims that unlabeled VHS tapes are "closed containers" for this purpose because the images recorded on the tapes are not visible to the naked eye and cannot be revealed without the use of a VCR. He also contends that VHS tapes, like purses or wallets, normally hold highly personal items. David's reliance on Krise is misplaced. First, we are not convinced that a VHS tape is a "container" though we note that the law in this area is sparse and unsettled. See, e.g., Runyan, 275 F.3d at 458 (assuming without deciding that computer disks are "containers"); State v. Munro, 124 P.3d 1221, 1223 (Or. 2005) (under state and federal constitutions, assuming with-

out deciding that viewing of a videotape on a VCR constitutes a search because a videotape does not announce its contents). Even if we assumed that a VHS tape is a container, we do not agree that it normally contains personal items closely identified with a given individual. VHS tapes record and store video images. Although some images may be private in nature, VHS tapes frequently contain commercially available motion pictures, family videos, and other material that is not regarded as reserved to a single individual and is not deemed private. Krise, on the other hand, dealt with a woman's purse, which is uniquely related to a given individual and is not ordinarily accessible by a man.

The mere fact that an object might be characterized as a "container" because it conceals its contents from view does not compel the conclusion that the "container" cannot be opened by another occupant. The relevant question is whether co-occupants exercise joint control and mutual use of the object for most purposes such that any occupant could permit inspection "in his own right." If so, the nonconsenting occupant assumed the risk of such inspection. A co-occupant may deny joint access over an object by keeping it in a place devoted to the owner's exclusive use[3] or where the object is one over which only one person normally exercises control and authority[4] or which "normally hold[s] highly personal items." Krise, 746 N.E.2d at 970. Similarly, a nonconsenting co-occupant may take steps to deny access to co-occupants to a designated area or object.[5] But in the absence of any such steps, a co-occupant may have mutual use and joint access to many items in the premises.

David makes two additional claims. He argues that because he owned the tapes, he retained exclusive control over them and Melissa lacked common authority over the tapes. He also claims that because Melissa had not previously viewed the 369 tapes, she did not have "joint access or control for most purposes." Neither ownership nor prior access is critical. See Matlock,

---

[3] See, e.g., Dell v. State, 2004 Alas. App. LEXIS 157, *11-12 (Alaska Ct. App. Aug. 11, 2004); State v. Vinuya, 32 P.3d 116, 132 (Haw. Ct. App. 2001); State v. Carsey, 650 P.2d 987, 991 (Or. Ct. App. 1982).

[4] See, e.g., United States v. Basinski, 226 F.3d 829, 834 (7th Cir. 2000), related proceeding vacated by, Altobello v. United States, 543 U.S. 1097 (2005) (locked briefcase); United States v. Fultz, 146 F.3d 1102, 1105-1106 (9th Cir. 1998) (sealed cardboard box where defendant was homeless man and box was held by court to be analogous to luggage); United States v. Jaras, 86 F.3d 383, 389 (5th Cir. 1996) (suitcase); United States v. Welch, 4 F.3d 761, 764 (9th Cir. 1993) (purse); State v. Zachodni, 466 N.W.2d 624, 628 (S.D. 1991) (purse).

[5] See, e.g., Block, 590 F.2d at 541 (locked trunk); In re Scott K., 595 P.2d 105, 110-11 (Cal. 1979) (locked toolbox); Harris, 642 A.2d at 1250 (locked toolbox); Williams, 616 P.2d at 1180 (closed and latched stereo cassette tape case).

415 U.S. at 171 ("Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes . . ."). In the absence of any steps taken by David to protect the tapes from examination by Melissa, Melissa had access to the tapes even if that access had not previously been exercised by the act of watching the tapes. See, e.g., United States v. Duran, 957 F.2d 499, 505 (7th Cir. 1992) (wife's consent extended to separate building on farm property husband used as a gym; wife's testimony that she could have gone in whenever she wanted shows authority, notwithstanding the fact she neither used that building nor left any of her effects there, as "[o]ne can have access to a building or a room but choose not to enter"); State v. Ford, 403 N.E.2d 512, 517-18 (Ill. App. Ct. 1980) (wife could consent to search of husband's tools in basement, as "[t]he basement was not locked and the wife was not instructed not to handle the tools" and the "mere fact that the defendant alone may have used these tools does not indicate that his wife was denied mutual use, access to, or control over them").

David contends that although Melissa had common authority over the basement, the 369 tapes removed from the ground floor were kept in three bedrooms that he specifically instructed Melissa not to enter. At the hearing on David's motion to suppress evidence, Melissa was asked whether David ever told her not to go into the bedrooms. She responded that she had unrestricted access to one of the bedrooms and that she also had access to the other two bedrooms but that David "preferred that I didn't [go in them] because they were mostly his stuff and they were messy." She further testified that she went into those two bedrooms approximately once a month, not because of any direction from David, but because they were extremely cluttered and she found the messiness upsetting. Melissa, Sergeant O'Donnell, and Dectective Towasnicki each testified that the three bedrooms in which the tapes were found were unlocked. They testified that the rooms were extremely messy, with labeled and unlabeled VHS tapes, clothing, overflowing cardboard boxes, magazines, and loose papers covering the surfaces of furniture and the floor. The trial court found that Melissa had actual and apparent authority over the bedrooms. This finding is supported by the record. We conclude that Melissa had access to and control over the tapes because she could have viewed the tapes at any time, even if she had not previously

9

done so.  Therefore her consent was sufficient to authorize the warrantless seizure and screening of all of the tapes the police removed from the home.

## II.  Challenges under Article I, Section 11 of the Indiana Constitution

David also argues that the separate protection against unreasonable search and seizure provided by Article I, Section 11 of the Indiana Constitution required the police to obtain a warrant before viewing tapes Melissa brought to the police station and tapes removed from the house.  David claims that challenges to third party consent brought under Article I, Section 11 are evaluated based on the existence of a third party's actual or apparent authority over the personal effect searched/seized rather than the premises where the effect is found.  He argues that "focusing" on the personal effects—the VHS tapes—leads to the conclusion that Melissa could not authorize viewing of the tapes because she did not own them and had never viewed them before.  David makes no additional argument in support of his state constitutional claim.[6]  We think the focus of the exclusionary rule is the reasonableness of police conduct, and find the police reliance on Melissa's apparent authority over the tapes to be reasonable.  Accordingly, we hold that viewing of the videotapes did not violate the Indiana Constitution's prohibition against unreasonable search and seizure.

## Conclusion

The trial court's order is affirmed.  This case is remanded for resolution on the merits.


Shepard, C.J., and Dickson, and Sullivan, JJ. concur.

Rucker, J., concurs in Part I-A and dissents in Parts I-B and II with separate opinion.

---

[6] David also argues that the Walter-Jacobsen principle does not apply under the Indiana Constitution and therefore, under Article I, Section 11, police viewing of the tapes Melissa had already viewed in the basement constituted a new search requiring a warrant.  Given our conclusion that the Walter-Jacobsen line of authority is inapplicable where, as is the case here, a third party possesses authority over an object and may lawfully consent to a government inspection of the object, we need not reach this issue.  However, where a private search is not justified by prior third party consent, we conclude that the state constitution would not require police to obtain a search warrant to conduct an inspection that went no further than an earlier private search.

**Rucker, Justice concurring in part and dissenting in part.**

I concur in Part I-A of the majority opinion. I dissent however to Part I-B believing there is no relevant distinction between the containers here and the containers in <u>Krise v. State</u>, 746 N.E.2d 957 (Ind. 2001), and <u>Halsema v. State</u>, 823 N.E.2d 668 (Ind. 2005). I also dissent to Part II because the relative ease with which the police could have obtained a warrant in this case rendered their warrantless search and seizure unreasonable within the meaning of Article I, Section 2 of the Indiana Constitution.

1